THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT WHEATLEY, Defendant-Appellant.

First District (5th Division)   No. 1—87—0143

Opinion filed August 11, 1989.

Randolph N. Stone, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant, Robert Wheatley, appeals from his convictions for armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1). He received concurrent sentences of eight years' imprisonment for armed robbery and three years' imprisonment for unlawful use of a weapon. On appeal, he raises the following four issues: (1) whether the trial court committed reversible error when it allowed the State to amend its answer to discovery by adding a name to its list of witnesses on the third day of trial; (2) whether he was denied his sixth amendment right of confrontation when a witness' prior inconsistent statement was admitted in evidence; (3) whether he was proven guilty beyond a reasonable doubt; and (4) whether he is entitled to credit for time served in custody prior to sentencing. For the following reasons, we affirm.

Defendant was tried for armed robbery and unlawful use of a weapon by a felon, and his brother, Kenneth Wheatley (Kenneth), was tried for armed robbery stemming from the same incident. Defendant waived his right to a jury trial but Kenneth was tried by a jury. The

State presented its witnesses against both defendants with the jury present and the jury was excused from the courtroom when defendant's attorney was cross-examining the State's witnesses. When the State rested its case against Kenneth, he presented his defense to the jury without defendant present. Afterward, the State continued its case against defendant and defendant presented his defense to the trial judge.

The State's witnesses established the following. Richard Gillis, the complaining witness, testified that on October 9, 1985, shortly before 10:45 p.m., he was walking home from work when he saw two black men standing in front of him on the sidewalk near an alley. One of the men, whom Gillis identified as Kenneth, pulled out a chrome-colored gun and demanded his money. Gillis said, "Alright. I'll give you my money," but Kenneth stated, "Get into the alley." Gillis offered to give him his money where they were but Kenneth again demanded he move into the alley. At this point, the second man led Gillis into the alley while Kenneth also pushed Gillis. They shoved Gillis into a door, and when Gillis hit it, the door flew open. They pushed him into the vestibule area. As Kenneth pointed his gun at Gillis, the second man went through his pockets. At this point, Gillis noticed the second man also had a gun, which was blue or black steel with a rubber band wrapped around the barrel. The second man took $17 from Gillis' pocket and said he knew Gillis had more money. Gillis gave the second man an envelope that he pulled out from his boot containing $140, a $35 check, and a deposit slip from his bank. The deposit slip had Gillis' name, business address, and account number imprinted on it. Pointing their guns at him, the men told Gillis to walk down the stairs and stay there for 5 or 10 minutes. After the men left, Gillis waited a minute or two and immediately called the police when he arrived home at approximately 10:45 p.m.

Sergio Rajkovich, a Chicago police officer, testified that on October 9, 1985, at approximately 11:20 p.m., he and his partner, Reno Baiocchi, were driving in a marked squad car when they observed a vehicle without license plates driving ahead of them and pulled it over. Inside the vehicle were defendant, who was the driver, Ted McLeod, who was the front seat passenger, Kenneth, who was in the back seat behind McLeod, and Vincent Wheatley (Vincent), who was in the back seat behind defendant. Defendant did not have a driver's license and was arrested. When Rajkovich asked the remaining occupants if any of them had a license to drive the car, Kenneth responded that he had a license. McLeod exited the vehicle so that Kenneth, who was in the back seat, could drive. As Kenneth got out

of the car, Rajkovich saw a chrome .357 magnum gun lying on the back seat where Kenneth was sitting. The occupants were ordered out of the car and all four men were handcuffed. Rajkovich searched the car and found a bluesteel .22 caliber gun with a rubber band wrapped around it. The gun was concealed under a seat cushion where Vincent was sitting. Both guns found in the car were loaded. On the floor of the driver's side, Rajkovich also found a bank deposit slip with the name "R.W. Gillis" imprinted on it.

The men were arrested and advised of their *Miranda* rights. At this time, Kenneth admitted that the chrome .357 magnum gun was his and they were in the area delivering phone books. At the station, the men were searched again and $61 was recovered from Vincent and $40 from McLeod.

Rajkovich testified that the four men were arrested approximately seven or eight blocks from where the robbery took place.

At approximately 1 a.m. on October 10, 1985, Gillis viewed a lineup of six persons which included defendant and Kenneth. Gillis identified Kenneth as one of the men who robbed him.

The State then rested its case against Kenneth and requested a continuance of defendant's trial to present additional witnesses against him. Over defendant's objection, his bench trial was continued for six days. Kenneth's jury trial proceeded and defendant's attorney did not participate in the court proceedings when Kenneth presented his defense to the jury.

Kenneth called his brother, Vincent, to testify in his behalf. Vincent testified that on the night in question, Kenneth, defendant, McLeod, and he were delivering telephone books. They made three stops, and each time defendant and McLeod got out of the car to make the delivery. Vincent and Kenneth remained in the back seat of the car. At the last stop defendant and McLeod left the car for approximately three to five minutes with two or three telephone books. When they returned, the group began to drive home. Shortly thereafter, Vincent noticed a police car following them with its emergency lights on. Before pulling over, McLeod handed defendant a gun and defendant handed two guns back to Vincent, telling him to "put them up." Vincent put one of the guns behind him and the other behind Kenneth. Vincent's testimony exculpated Kenneth but inculpated defendant in the robbery.

When the bench trial continued against defendant, the State moved to amend its answer to discovery to add Vincent's name to its list of witnesses. Defendant objected but the trial court granted the motion. The case was continued approximately two more weeks be-

cause another State witness was not present in court.

At the next date for trial, the State called Vincent as a witness against defendant. When asked what his name was, Vincent stated, "I do not want to testify in this case, period, because I do not remember." When asked whether he was the same Vincent Wheatley who previously testified at Kenneth's trial he stated, "I don't remember." He admitted defendant was his brother. Vincent testified he did not remember where he lived, whether he owned a car, or whether he was with defendant on the night of the robbery. When asked again whether he remembered testifying previously, he stated, "I don't know, would you stop hassling me, I don't know, can I be excused, Judge?" The court reminded Vincent he was subpoenaed to testify as a witness. When the State asked whether he previously testified at Kenneth's trial, Vincent stated, "I have, did." Later, he again stated he did not remember testifying previously. During Vincent's testimony the trial court offered defendant's counsel the opportunity to speak with Vincent and continue the trial for two days but defendant's counsel declined. After further questioning by the State, Vincent stated he was claiming the fifth amendment. The court found he waived the fifth amendment privilege by testifying previously on the same matter. The State questioned Vincent concerning his prior testimony but Vincent continued to answer "I don't know" or "I don't remember."

Over defendant's objection, the trial court allowed the State to introduce Vincent's prior testimony at Kenneth's trial as substantive evidence under section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1). The State read portions of Vincent's prior testimony and asked whether he remembered testifying. He continued to answer "I don't remember."

Defendant cross-examined Vincent but he would only answer "I don't remember" to every question. Defendant's attorney then stated, "I can't cross-examine him, that's all that I have, he said I doesn't [sic] remember to everything, it's fruitless for me to go on."

On the State's motion, the court found Vincent in contempt of court, citing his prior testimony 2½ weeks earlier, and indicated that Vincent was subverting justice by feigning memory loss. The court sentenced him to 30 days' imprisonment.

The parties stipulated that Vincent previously testified under oath in the case against Kenneth and that the transcript of his testimony on that day was accurate.

The parties also stipulated that defendant was convicted of burglary in 1980, convicted of theft in 1982, and again convicted of theft

in 1984. The State then rested and defendant's motion for a directed verdict was denied.

Defendant testified that on the night of the robbery, he was working for Rueben H. Donnelly delivering telephone books. His brothers, Kenneth and Vincent, and his neighbor, Ted McLeod, went with him in Vincent's car. While they were delivering the telephone books, they smoked marijuana. They made 10 stops that evening. At different stops, two, three, or all four of the men would get out of the car to make the deliveries. On the last stop, Vincent and McLeod left the car to deliver the telephone books. Three or four minutes after the last delivery at approximately 11:40 p.m., they were stopped by the police, who asked whether they had drugs in the car. After the police officers searched each of them and searched the car, they were placed under arrest.

Defendant admitted he was on parole on October 9, 1985, and he knew the consequences of parole violations. Defendant testified he did not have a gun with him that evening and did not know that any of the others had guns with them. Defendant denied committing the armed robbery and did not know whether any of the others robbed Gillis. He also denied that he handed two guns to Vincent when the police were following them.

The court found defendant guilty of armed robbery and unlawful use of a weapon by a felon and denied defendant's motion for a new trial. Defendant now appeals.

OPINION

I

Initially, defendant argues the trial court erred when it allowed the State to add Vincent to its list of witnesses on the third day of trial. The trial court, in granting the State's request, noted that Vincent's name had previously appeared on the State's witness list filed for both defendants but was stricken before trial. The trial was then continued for two weeks because another State witness was not present in court.

■■ Supreme Court Rule 412 provides that upon a defendant's written motion, the State is required to disclose the names and addresses of the persons it intends to call as witnesses "as soon as practicable." (107 Ill. 2d R. 412.) The trial court has the discretion to allow a previously unlisted witness to testify at trial and its decision will not be disturbed on review unless defendant was surprised or prejudiced. *People v. Millan* (1977), 47 Ill. App. 3d 296, 361 N.E.2d 823.

On appeal, defendant relies solely on *Millan*, which is clearly distinguishable from the present case. In *Millan*, the State moved to add a witness three days prior to trial. When defendant requested a continuance to prepare for the witness, the State withdrew the name and stated it would not call that witness in its case in chief. Three days later, on the first day of trial, the State reiterated that it would not call that witness. The next day, however, the State moved to add the witness for its case in chief. Defendant's objection was overruled. Defendant's counsel was allowed to interview the witness before he testified that day. Defendant was found guilty, but on appeal, the reviewing court reversed his convictions based on the surprise and prejudice to defendant. The court found that defense counsel's quick interview with the witness was not a substitute for the State's compliance with discovery rules and defendant's counsel should have been given ample time to prepare for the witness. The court, in reversing the convictions, found that the State's representations that it would not call the witness bordered on bad faith.

■ Unlike the defendant in *Millan*, defendant here was not surprised or prejudiced by the addition of Vincent's name to the State's list of witnesses. In *Millan*, the witness' name did not appear on the State's witness list prior to trial. In the present case, however, defendant concedes Vincent's name appeared on the State's witness list prior to trial but was stricken the day trial began. Although the State moved to add Vincent to its list of witnesses on the third day of trial, the trial was continued two weeks before Vincent would testify. During Vincent's testimony defendant's counsel declined the trial court's offer to continue the trial an additional two days. Defendant's counsel then had ample time to prepare for Vincent's testimony.

Also unlike *Millan*, the record in the present case does not indicate that the State's conduct amounted to bad faith. In its reply brief, defendant contends that he was prejudiced by the State's "tactics" in removing Vincent's name from its witness list, continuing defendant's trial, and then calling Vincent as a witness after he testified for Kenneth. This conduct, however, does not rise to the level of the State's mispresentations that occurred in *Millan*.

■ Defendant also argues, without citation to authority, that he was prejudiced because he should have been allowed to cross-examine Vincent when he testified on the stand in Kenneth's trial. It is important to note, however, that Kenneth called Vincent as a witness to testify in his behalf in what was essentially a separate trial. Vincent was not a State witness at that point under which circumstances defendant would have had the right to cross-examine him.

From a review of the record, defendant had ample time to prepare for the witness and there was no evidence of bad faith on the State's part. Accordingly, the trial court did not abuse its discretion when it allowed Vincent to testify.

## II

Defendant also argues that Vincent's statement was improperly admitted as substantive evidence under section 115—10.1 because defendant did not cross-examine Vincent when he testified at Kenneth's trial and that his sixth amendment right of confrontation was violated.

At issue here is the application of section 115—10.1, which in relevant part provides:

> "§115.10.1. Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>
> (b) the witness is subject to cross-examination concerning the statement, and
>
> (c) the statement—
>
> (1) was made under oath at a trial, hearing, or other proceeding ***." Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.

█ Defendant initially argues that under section 115—10.1 the prior testimony should not have been admitted because defendant did not cross-examine Vincent at the time he previously testified. Defendant misinterprets the requirements of the section. The section requires that "the witness is subject to cross-examination concerning the statement." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1(b).) This refers to the witness being subject to cross-examination at the time his prior inconsistent statement is admitted in evidence. See *People v. Flores* (1989), 128 Ill. 2d 66, 88, 538 N.E.2d 481, 489 (a declarant's prior grand jury testimony is admissible when "the declarant is testifying as a witness and [is] subject to full and effective cross-examination").

The Illinois Supreme Court has recently decided the issue presented by defendant in a case with similar facts. In *Flores* (128 Ill. 2d 66, 538 N.E.2d 481), the trial court admitted a witness' grand jury testimony under section 115—10.1 when at defendant's trial the witness testified he could not remember the content of his prior grand jury testimony. Defendant appealed his convictions and argued, among other issues, that the witness' two statements were not inconsistent

and that defendant was denied his right of confrontation under the sixth amendment. The court found the witness' prior grand jury testimony was properly admitted under section 115—10.1.

Although defendant here does not argue the point, the supreme court in *Flores* found the trial court did not abuse its discretion when it determined that the witness' "professed memory loss" on the stand and his prior grand jury testimony were inconsistent. (*Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489.) Similarly here, the trial court did not abuse its discretion when it found Vincent's claimed memory loss was inconsistent with his prior testimony in Kenneth's trial.

■ Defendant argues that his sixth amendment right to confront witnesses was violated when Vincent would only testify "I don't remember" to defendant's cross-examination questions.

The sixth amendment in relevant part states, "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." (U.S. Const., amend. VI.) In addressing the issue presented, we note the reasoning of our supreme court in *Flores*:

> "The confrontation clause [of the sixth amendment] is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. [Citations.] Contrary to the defendant's assertions, a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination." (*Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489.)

The supreme court in *Flores* relied on the recent United States Supreme Court decision in *United States v. Owens* (1988), 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838. In *Owens*, the Supreme Court addressed the issue presented and stated, " 'the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ' " (Emphasis in original.) *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 957, 108 S. Ct. at 842, quoting *Kentucky v. Stincer* (1987), 482 U.S. 730, 739, 96 L. Ed. 2d 631, 643, 107 S. Ct. 2658, 2664.

■ In *Owens*, the court determined that a witness is subject to cross-examination under Rule 801 of the Federal Rules of Evidence (Fed. R. Evid. 801) when the witness "is placed on the stand, under oath, and responds willingly to questions." (*Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844.) The phrase "subject to cross-examination" is also used in section 115—10.1, and defendant argues

that Vincent did not willingly respond to questions because he "refused to answer questions." Defendant's characterization of Vincent's testimony is inaccurate, however, because Vincent, rather than having refused to answer questions, merely testified he did not remember. As stated in *Owens*:

> "[L]imitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the rule no longer exists. But that effect is not produced by the witness's assertion of memory loss—which \*\*\* is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." (*Owens*, 484 U.S. at 561-62, 98 L. Ed. 2d at 959, 108 S. Ct. at 844.)

Accordingly, we find Vincent was subject to cross-examination as required under section 115—10.1.

Despite defendant's arguments to the contrary, we note that when a witness' prior statement was made under oath at a trial, hearing, or other proceeding there is no requirement under section 115—10.1 that the witness admit he made the prior statement before it can be introduced as evidence.

With the authority of *Owens* and *Flores* we find that defendant's sixth amendment right of confrontation was not violated by the admission of Vincent's prior testimony under section 115—10.1.

### III

Defendant also argues he was not proven guilty beyond a reasonable doubt because his conviction was based in large part on the "unreliable" testimony of his brother, Vincent, and was otherwise based on insufficient evidence.

When a defendant claims he was convicted with insufficient evidence, the evidence must be reviewed in a light most favorable to the prosecution and the court must determine whether any rational trier of fact could have found defendant guilty of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) It is the function of the trier of fact to determine the reliability of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*Young*, 128 Ill. 2d 1, 538 N.E.2d 461.) The reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence presented is so unreasonable, im-

probable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Young*, 128 Ill. 2d 1, 538 N.E.2d 461.

Defendant relies on *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291, where defendant was convicted of robbery based in part on the testimony of a witness who admitted he helped defendant plan the crime. Defendant contended the accomplice's testimony was uncorroborated and, therefore, he was not convicted beyond a reasonable doubt. On review, the court noted that the uncorroborated testimony of an accomplice is sufficient to justify a conviction but must be regarded with suspicion and caution. The court reversed the conviction because defendant was not proven guilty beyond a reasonable doubt. The court found the accomplice's testimony did not have the "absolute conviction of truth" because he was incarcerated at the time on other indictments, he admitted planning the crime, and he was promised immunity. *Wilson*, 66 Ill. 2d at 349-50, 362 N.E.2d at 292.

*Wilson* does not support defendant's argument that he was not convicted beyond a reasonable doubt. Here, Vincent was never charged with the crime in question, was not in jail at the time with other pending crimes, and did not admit to having any role in the armed robbery. In fact, he denied any knowledge of the crime. He also did not testify with the promise of immunity. Vincent was not an accomplice as was the witness in *Wilson*, and therefore, there is no requirement that his testimony be viewed with skepticism and caution.

The evidence establishes that Gillis was robbed by two men, one carrying a chrome-colored gun and the other carrying a blue or black steel gun with a rubber band wrapped around it. Gillis identified Kenneth as one of the men who robbed him but could not identify the second man. Less than one hour later, defendant, who was with Kenneth and two other men, was stopped by the police near the area where the robbery took place. The police discovered two guns in the car that matched the description of those used in the robbery. Also in the car on the floor near where defendant was sitting, the police discovered Gillis' bank deposit slip which he gave to the second man who robbed him. Vincent's prior testimony at Kenneth's trial, which was properly admitted in evidence in defendant's trial, established that defendant left the car on each of the stops they made. When Vincent noticed that the police were following them, defendant handed two guns to Vincent in the back seat and told him to "put them up."

Basically, defendant is arguing a credibility question between the testimony of Vincent and defendant. The trial court considered

Vincent's testimony and found he was not credible and unworthy of belief in many respects. However, the court found that Vincent's testimony at Kenneth's trial was "a matter of significance and importance when a person identifies a brother as having been involved in a commission of a crime." Based on the significance of Vincent identifying his brother, the court could not discount Vincent's testimony. On the other hand, the court found that defendant's testimony was not credible. The court, noting that the only issue was which two men in the car committed the offense, focused on defendant's testimony that he claimed he did not know who was involved in the robbery or that guns were in the car. The court found defendant's testimony was not truthful and did not make sense.

We will not substitute the trial court's judgment in determining that Vincent was credible and defendant was not. Also, after reviewing the evidence presented, we cannot say it was so unreasonable, improbable, or unsatisfactory to raise a reasonable doubt of defendant's guilt.

## IV

Lastly, defendant argued that he was entitled to credit for the time he served in custody prior to being sentenced. During the pendency of this appeal, the State's Attorney and the public defender filed a stipulation in this court agreeing that defendant was entitled to 447 days of sentence credit. By separate order of this court, we remanded this issue with directions that defendant be given 447 days of sentence credit.

Affirmed.

MURRAY, P.J., and COCCIA, J., concur.