Sixth Division
December 5, 2008

No. 1-06-3495

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) Appeal from the Circuit Court |
| | ) of Cook County |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) 04 CR 9869 |
| | ) |
| WADE HAMPTON, | ) |
| | ) Honorable |
| Defendant-Appellant. | ) Joseph J. Kazmierski, |
| | ) Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

In 2004, defendant Wade Hampton was arrested and charged with the 1993 shooting death of Terrance McKinney. Following a jury trial, defendant was found guilty of first degree murder. The trial court subsequently sentenced defendant to 28 years in prison.

Defendant appeals, arguing that: (1) he was deprived of his constitutional right to cross-examine one of the State's witnesses who testified that he was unable to remember the events surrounding the shooting and the trial court then allowed the admission of the witness's prior testimony from a codefendant's trial; and (2) the prosecutor's comments in closing and rebuttal arguments exceeded the bounds of fairness and impartiality and denied defendant a fair trial.

The following evidence was admitted at defendant's June 2006 trial.

Demetrius Foster testified that in July 1993, he was friends with Terrance McKinney. They had known each other since high school. On the night of July 17, 1993, he met some friends, including McKinney, at Union Hall, located at 9340 South Chicago, for a reggae party.

At around 2:30 a.m., Foster saw McKinney talking to a man he did not know. Foster

estimated he was 20 to 25 feet away from McKinney at this time. He said the men talked for about five to six minutes. One man went outside and McKinney turned to Foster and asked Foster to get someone. McKinney then went outside. Foster identified defendant as the man he saw talking to McKinney. Foster went outside about two to three minutes after McKinney.

When Foster went outside, McKinney was standing a little in front of him. Then, Foster saw a red car pull up and defendant went to the car. Defendant turned around and shot McKinney. Foster was about 25 to 30 feet away at this point. Foster saw McKinney get shot in the stomach. McKinney then turned to take cover between cars and defendant walked toward him. Foster stated that defendant fired the gun five or six times. Foster testified that he made eye contact with defendant and then he "dove" for cover between some cars. The shots went over his head. After he took cover, Foster "heard the wheels go." He got up and saw McKinney on the ground.

Later at the hospital, Foster spoke with the police. He was shown pictures and he identified defendant and the driver of the red car. In August 1993, Foster viewed a lineup and identified the driver of the red car.

On cross-examination, Foster stated that he testified at the trial for Dwight Ramsay, the driver of the red car. He admitted he knew William Lockwood, one of the bouncers at Union Hall, but he was not a personal friend. He does not remember if he talked to Lockwood right before the shooting, but he seemed to remember talking to him at some point. He denied that Lockwood had to break up the conversation between McKinney and defendant. He admitted that he might have testified at Ramsay's trial that he went outside seconds after McKinney. Foster

said that he had a few beers that night, but denied that had been getting drunk at home before going out. However, he admitted that he had testified at Ramsay's trial that he had been home getting drunk. Foster did not recall describing the shooter to the police as 5 feet 6 inches tall, 145 pounds with a medium complexion.

Dr. Edmund Donoghue testified that he is employed by the office of medical examiner of Cook County. He stated that McKinney was shot three times; once in the abdomen and twice in his left leg. He said there was no evidence of close-range firing. He concluded that the cause of death was multiple gunshot wounds and the manner of death was homicide.

William Lockwood testified that in July 1993, he was employed as a bouncer for Union Hall, a reggae club. Lockwood stated that all he could remember about the night of July 17, 1993, was that someone got shot and a red car was involved. When asked questions about the details of the shooting and any identifications he made, he testified that he could not recall. Lockwood also said that he did not remember testifying in the 1995 trial for codefendant Ramsay. The prosecutor went through Lockwood's prior testimony and asked him if he recalled the questions asked and the answers given. Other than questions about his employment and the color of the car involved, Lockwood indicated that he did not remember. Lockwood testified that he "had major reconstructive surgery and [his] memory [was] not what it used to be." On cross-examination, Lockwood explained that he had been in a car accident and now has a steel jaw. When asked if this accident effected his memory, Lockwood answered that "it's kind of sketchy." Lockwood continued to answer that he did not recall the circumstances of the shooting and said he did not recognize defendant.

1-06-3495

Sergeant Charles Popelarz testified that in July 1993, he was a detective with the Chicago police department and was assigned to investigate McKinney's homicide. He interviewed both Foster and Lockwood and assembled a photo lineup for them. Popelarz stated that Foster identified defendant as the shooter and codefendant Ramsay as the driver of the red car. Lockwood viewed the pictures separately and he also identified defendant as the shooter and Ramsay as the driver. In August 1993, Popelarz was informed by the state police in Ohio that Ramsay was in custody. Ramsey was subsequently extradited to Chicago. Later, a lineup was conducted and Foster identified Ramsay in the lineup.

On cross-examination, defendant's attorney asked Popelarz about his initial interview of Foster and Popelarz's report of that interview. Popelarz said that Foster told him that the offender was the passenger in the red car when it pulled up in front of the club. The offender then got out of the car and started firing at McKinney. Popelarz did not recall being told by Foster that the offender pointed a gun at him and they made eye contact.

Codefendant Dwight Ramsay testified for the State and admitted that he was convicted in 1995 for McKinney's murder and received a 20-year sentence. At the time of trial, Ramsay had completed his time for McKinney's murder, but was serving time for a conviction for contraband in a penal institution. Ramsay knew defendant "from a friend of a friend." In 1993, he had known defendant for about a year and a half. Ramsay identified defendant in court.

Ramsay stated that on July 17, 1993, he went to a reggae party at 93rd and South Chicago with defendant. The men took his car, which was a 1987 red Sterling. Ramsay said that he brought a gun with him to the party and he believed that defendant had one too. At around 2:30

4

a.m., Ramsay saw defendant talking to McKinney, whom he had seen on one prior occasion. Ramsay thought something was going on because McKinney had "aggressive" body language. Eventually, defendant came over to Ramsay and told him to leave first and defendant would follow. Ramsay exited the club and went to his car. He pulled the car onto the street and saw defendant in a conversation with McKinney. Ramsay stated that he opened the passenger door and shouted for defendant "to come on."

Defendant came over to the car and then turned around and fired on McKinney. Ramsay testified that defendant got the gun from his waist. Ramsay said that McKinney was a few feet from defendant when the shooting started. McKinney tried to take cover behind some cars while defendant chased him and continued shooting. After the shooting, defendant got in the passenger seat of Ramsay's car and Ramsay drove off.

After the shooting, Ramsay and defendant decided to go to New York to lay low. On the way to New York, they were in a car accident in Ohio. Ramsay showed the Ohio police an identification with a fake name on it and was arrested under that name. Defendant left the area. When Ramsay posted bond, he tried to retrieve his car, but was unable to do so. He then flew to New York and met up with defendant. He stayed there for about two weeks. On his way back to Chicago, Ramsay again tried to retrieve his car in Ohio, but he was arrested by the Ohio police and later brought back to Chicago. Ramsay denied being offered any promises in exchange for his testimony.

On cross-examination, Ramsay testified that he had someone else bring his gun into the club. He said that when he pulled up in his car, he called for defendant to "come on," and opened

the door hoping that defendant would get in the car. Ramsay also stated that the first time he was approached by the State to testify, he declined. Later, Ramsay contacted the State and offered to help. Ramsay admitted that he had immigration problems because he is a Jamaican citizen. He did not want to be sent back "as a convict being shackled." He testified that the State offered to write a letter saying that Ramsay testified in defendant's case.

Detective John Campbell testified that he is employed by the Chicago police department and assigned to the cold case homicide squad. In 2004, Campbell was assigned to the fugitive apprehension section. In April 2004, defendant was taken into custody in Oakland, California, and Campbell went there to bring him back to Chicago. Campbell identified defendant in court. Campbell stated that at the time of his arrest, defendant had an Illinois State identification card bearing his picture under the name of Kevin King.

Campbell flew back to Chicago with defendant. During the flight and after having been given his Miranda rights, defendant asked Campbell about the case. He asked how many years Ramsay had received and who were the witnesses against him, but Campbell did not divulge that information. Defendant admitted to Campbell that he had been at the reggae club that night, but was evasive when Campbell asked about his involvement.

The State offered a stipulation that if called to testify Angela Tisdale would state that she was an assistant State's Attorney and was present in 1995 for Ramsay's trial. She would testify that Lockwood testified in that case. The State then read into the record the transcript of Lockwood's testimony.

Lockwood testified that in July 1993 he knew who McKinney was, but they were not

friends. He saw McKinney at Union Hall on the night of July 17, 1993. At around 2:30 a.m., Lockwood was by the door and was called to "neutralize the situation." He asked the two men arguing to take it outside. Lockwood said one of the men was McKinney, but he did not know the name of the other man, though he recognized him as previously having attended the club. The men walked outside and stood near the curb. Lockwood was having a conversation with his partner and Foster. At that time, a red car pulled up and the other man turned and walked toward the car. He then turned around and proceeded to shoot McKinney. McKinney was shot once and then tried to take cover while the other man continued to shoot. The other man then jumped into the red car and it pulled away.

Lockwood identified the red car as a Sterling. He described it as having a neon pink trim around the back license plate and panels that were gray on the bottom part of the car. Lockwood saw at least two individuals in the car. Lockwood said that he could not see the type of weapon used, but testified that "from [his] knowledge [he] knew it was an automatic, a large caliber automatic." Lockwood did not recall how many shots were fired. He knew it was more than 2, possibly more than 5, but did not know if it was more than 10. Lockwood said when the shots were fired, he took cover behind a car.

Later, on July 20, 1993, Lockwood stated the police came to his house to show him several black and white photographs. He identified the man he saw arguing with McKinney and the driver of the red car. The State also stipulated that the pictures identified in Lockwood's testimony were of defendant and Ramsay.

The State rested following this stipulation. Defendant moved for a directed finding, which

7

the trial court denied. Defendant offered two stipulations in his case. One was the letter prepared by the prosecutor to Ramsay's immigration attorney indicating that the prosecutor would contact the individuals involved in Ramsay's immigration status and inform them of Ramsay's participation as a witness and "his willingness to cooperate." The second stipulation was from a retired police officer who would have testified that Foster's description of the shooter was of a male black Jamaican, 5 feet 6 inches tall, 145 pounds, in his twenties and with a medium complexion. Defendant then rested his case.

Following arguments and instructions, the jury began its deliberations. During deliberations, the jury requested a copy of the police report containing Foster's statements and a copy of Lockwood's 1995 testimony. The parties agreed to respond that the jury had all of the exhibits it would receive. The jury found defendant guilty of first degree murder and the trial court subsequently sentenced defendant to a term of 28 years' imprisonment.

This appeal followed.

Defendant first argues that his right to cross-examine witnesses was denied in violation of the confrontation clause under Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and section 115-10.1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1(b) (West 2004)). Specifically, defendant contends that the trial court erred in admitting Lockwood's testimony from Ramsay's 1995 trial because defendant was not able to effectively cross-examine Lockwood due to Lockwood's memory loss. The State maintains that defendant's sixth amendment right to confrontation was not violated because Lockwood was subject to cross-examination and the admission of his prior inconsistent statements satisfied both

1-06-3495

Crawford and section 115-10.1.

"It is important to note that in determining whether a prior out-of-court statement is admissible, the proponent of the statement first must meet the requirements of the applicable statutory hearsay exception as set out in section 115-10 *et seq.* (725 ILCS 5/115-10 *et seq.* (West 2002)). The holding in Crawford should be considered only after the court determines the proffered statement complies with the requirements of the applicable statute." People v. Martinez, 348 Ill. App. 3d 521, 535 (2004). Accordingly, we will first consider whether Lockwood's prior testimony from Ramsay's trial satisfies the requirements of section 115-10.1. We review the trial court's decision to admit Lockwood's prior testimony for an abuse of discretion. People v. Watkins, 368 Ill. App. 3d 927, 931 (2006).

Section 115-10.1 provides, in relevant part:

"In all criminal cases, evidence of a statement made by a witness is

not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the

hearing or trial, and

(b) the witness is subject to cross-examination concerning

the statement, and

(c) the statement--

(1) was made under oath at a trial, hearing, or other

proceeding[.]" 725 ILCS 5/115-10.1 (West 2004).

Here, defendant asserts that subsection (b) has not been satisfied in this case because

9

Lockwood was not able to recall his prior testimony and therefore was not subject to cross-examination. Defendant relies on People v. Yarbrough, 166 Ill. App. 3d 825 (1988), and People v. Redd, 135 Ill. 2d 252 (1990), for the proposition that he was denied his right to confront Lockwood. In Yarbrough, the Fifth District found that the trial court erred in admitting a prior inconsistent statement as substantive evidence pursuant to section 115-10.1 after a witness refused to answer any questions and claimed he could not remember testifying before the grand jury. Yarbrough, 166 Ill. App. 3d at 830-31. The reviewing court held that section 115-10.1 was not satisfied because the witness was not subject to meaningful cross-examination concerning the out-of-court statements. Yarbrough, 166 Ill. App. 3d at 831. However, decisions issued by the United States Supreme Court and the Illinois Supreme Court after Yarbrough was published render its authority questionable. In Redd, the witness invoked his fifth amendment privilege and refused to answer any questions about his grand jury testimony. Redd, 135 Ill. 2d at 297-98. The supreme court found that the witness's refusal to respond undermined the cross-examination requirement and held that the trial court erred in admitting the prior inconsistent statements. Redd, 135 Ill. 2d at 312.

The confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Delaware v. Fensterer, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985). In United States v. Owens, 484 U.S. 554, 564, 98 L. Ed. 2d 951, 961, 108 S. Ct. 838, 845 (1988), the Supreme Court held "that neither the [c]onfrontation [c]lause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable,

because of a memory loss, to testify concerning the basis for the identification."

> "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists. But that effect is not produced by the witness's assertion of memory loss-which, as discussed earlier, is often the very result sought to be produced by cross-examination, and can be effective in destroying force of the prior statement." Owens 484 U.S. at 561-62, 98 L.

In People v. Flores, 128 Ill. 23d 66 (1989), the Illinois Supreme Court considered the issue of whether a prosecution witness who testifies that he does not remember events was subject to cross-examination. The witness testified under a grant of immunity. On direct examination, he said he could not recall a conversation with defendant about the death of the victim. The witness also stated that he did recall testifying before the grand jury, but could not remember the substance of his testimony. After refreshing his recollection with a transcript of his grand jury testimony, the witness acknowledged that it contained an accurate description of his grand jury testimony. Flores, 128 Ill. 2d at 78-79. On appeal, the defendant argued that the witness's "professed memory loss as to the content of the conversation he had with the defendant deprived defense counsel of an opportunity to cross-examine the witness concerning his prior

11

1-06-3495

testimony," and therefore, the admission of the witness's grand jury testimony denied defendant his rights under the confrontation clause. Flores, 128 Ill. 2d at 88. The Flores court relied extensively on Owens and found the witness was sufficiently subjected to cross-examination and the trial court did not err in admitting the grand jury testimony. Flores, 128 Ill. 2d at 90. Contrary to the defendant's assertions, a gap in the witness's recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. Flores, 128 Ill. 2d at 88, citing Owens, 484 U.S. at 564, 98 L. Ed. 2d at 961, 108 S. Ct. at 845.

Likewise, in People v. Wheatley, 187 Ill. App. 3d 371 (1989), the defendant argued on appeal that he was denied his right to cross-examine a witness after the witness responded "I don't remember" to every question asked. In that case, the defendant was on trial for armed robbery and unlawful use of a weapon by a felon. The defendant's case was being heard as a bench trial while defendant's brother Kenneth received a jury trial. At Kenneth's trial, another brother, Vincent, gave testimony that exculpated Kenneth but inculpated the defendant. The State called Vincent at the defendant's trial, but Vincent claimed he did not want to testify and did not remember his prior testimony. On cross-examination, Vincent repeatedly answered questions with "I don't remember." Over the defendant's objection, the trial court admitted the transcript of Vincent's testimony in Kenneth's trial. Wheatley, 187 Ill. App. 3d at 375-76. The defendant claimed on appeal that he was denied his right to cross-examine Vincent because he would only answer "I don't remember" to defense counsel's questions. Wheatley, 187 Ill. App. 3d at 379-80. Following Owens and Flores, the reviewing court held that Vincent was properly subject to cross-examination because Vincent "rather than having refused to answer questions, merely testified he

12

did not remember." Wheatley, 187 Ill. App. 3d at 381. The Wheatley court also noted that "when a witness' prior statement was made under oath at a trial, hearing, or other proceeding there is no requirement under section 115-10.1 that the witness admit he made the prior statement before it can be introduced as evidence." Wheatley, 187 Ill. App. 3d at 381.

More recently, the decisions in People v. Martinez, 348 Ill. App. 3d 521 (2004), and People v. Watkins, 368 Ill. App. 3d 927 (2006), have also addressed the admissibility of prior inconsistent statements under section 115-10.1 when the testifying witness professed a memory loss for the incident in question. In Martinez, a witness gave a statement to an assistant State's Attorney about the events surrounding a fatal beating, but at trial, she said she remembered about 50% of the events. The trial court admitted the witness's statement as substantive evidence. The defendant argued on appeal that the witness' inability to recall the events made her "incapable of cross-examination." Martinez, 348 Ill. App. 3d at 531. The reviewing court, relying on Flores and Wheatley, rejected the defendant's argument and found that the defendant's attorney thoroughly questioned the witness about her inability to recall the events and challenged her reliability. Thus, the court found her available for cross-examination and in satisfaction of section 115-10.1. Martinez, 348 Ill. App. 3d at 533.

In Watkins, two witnesses responded " 'I don't recall,' 'I don't remember,' or 'I can't remember' to virtually every question that was asked" at trial about the circumstances of an altercation involving several people. Watkins, 368 Ill. App. 3d at 929. The witnesses' grand jury testimony as well as one of the witnesses' statements to the police were admitted as substantive evidence. On appeal, the defendant contended that she did not have a meaningful opportunity to

cross-examine the witnesses about the substance of their statements. The <u>Watkins</u> court found support in <u>Flores</u> and <u>Wheatley</u> as well as <u>Owens</u> and <u>Martinez</u> and concluded that the witnesses were sufficiently cross-examined by defense counsel about their ability to recall the circumstances of the altercation. <u>Watkins</u>, 368 Ill. App. 3d at 931.

In the present case, Lockwood testified at defendant's 2006 trial that as to the night of July 17, 1993, he remembered a shooting occurred and that a red car was involved. When asked if he recalled ever identifying or speaking to the police in regards to the persons that did the shooting, he responded, "I do recall that, yes." When asked if he testified at Ramsay's 1995 trial, Lockwood responded, "Yes, I guess so. You have my testimony there." The prosecutor asked Lockwood if he told the truth at the 1995 trial and Lockwood replied, "I am sure I did." Further, Lockwood described his memory as "sketchy" and "not what it used to be." He stated that he had "major reconstructive surgery" following a car accident. On cross-examination, defendant's attorney further questioned Lockwood about his memory loss. He asked Lockwood if he recognized defendant, and Lockwood said he did not. Unlike the witnesses in <u>Yarbrough</u> and <u>Redd</u>, Lockwood never refused to answer any questions nor raised a fifth amendment privilege. He willingly answered questions about the shooting and what he could recall. He did not deny testifying at Ramsay's trial, he stated that he did not recall but was sure he told the truth. We find that the trial court did not err in admitting Lockwood's prior testimony under section 115-10.1 where defendant was given the opportunity to challenge Lockwood's credibility through cross-examination.

Next, we turn to defendant's constitutional challenge under <u>Crawford</u>. Several recent

14

cases have addressed similar issues to that raised in this case. These cases considered whether a witness appeared for cross-examination in light of the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), which differentiated between "testimonial" and "nontestimonial" hearsay. The Crawford Court stressed that when the declarant appears for cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior testimonial statements. Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9.

In People v. Sharp, 355 Ill. App. 3d 786 (2005), the Fourth District discussed what it meant to "appear for cross-examination" for purposes of the confrontation clause. In Sharp, the defendant was charged with predatory criminal sexual assault. Following a hearing pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2000)), the trial court allowed into evidence hearsay statements that the victim had made to her mother and to the director of a children's advocacy center. The victim testified at the defendant's trial, but did not respond on direct examination to questions about the details of the actual offense. On cross-examination, defense counsel asked general questions regarding the victim's activities on the day of the alleged assault as well as questions about the room where the assault allegedly took place. However, defense counsel did not to ask the victim any questions about what happened in the room when she and defendant were in it together. A jury convicted the defendant of the charged offense. Sharp, 355 Ill. App. 3d at 790-91.

The Sharp court pointed out that although Crawford did not explain what it meant to appear for cross-examination, it did not overrule or call into question the prior decisions of

Fensterer and Owens. Sharp, 355 Ill. App. 3d at 792-93. After reviewing this authority, the court determined that the victim appeared for cross-examination "[b]ecause she was present for cross-examination and answered defense counsel's questions." Sharp, 355 Ill. App. 3d at 795. Therefore, the court concluded that because the victim appeared for cross-examination, the confrontation clause did not bar the admission of the victim's hearsay statements at trial. Sharp, 355 Ill. App. 3d at 795-96.

Similarly, in People v. Bueno, 358 Ill. App. 3d 143 (2005), the Second District considered whether a witness was unavailable for cross-examination after the witness refused to answer questions. In Bueno, the defendant was charged with aggravated discharge of a firearm within 1,000 feet of real property comprising a school, aggravated discharge of a firearm, and aggravated unlawful use of a weapon. In that case, one of the State's witnesses gave multiple statements to the police, implicating different individuals. At trial, the witness admitted that he "gave some statements" concerning the shooting. In addition, the witness acknowledged providing police with a verbal statement, which the police reduced to writing. He then identified People's exhibit 34 as the first statement he gave to police. When questioned about the specifics of the first statement, the witness indicated that he could not remember and then refused to testify any further. The witness persisted in refusing to testify, despite a trial court order that he respond to the State's inquiries. At that point, the court found the witness in direct contempt of court and delayed any further questioning until the witness had a chance to consult with his attorney. The State recalled the witness after he spoke with his attorney. The witness denied making certain statements to police and then refused to testify any further. However, the trial court made the

16

witness available to defense counsel for cross-examination. On cross-examination, the witness admitted that he signed the first statement. He then reviewed the statement and testified that parts of the statement were his, but that he could not recall which ones. Defense counsel then stated that he had "nothing further." Bueno, 358 Ill. App. 3d at 154-55.

The Bueno court followed the Fourth District's analysis in Sharp and its consideration of Crawford, Owens, and Fensterer. Bueno, 358 Ill. App. 3d at 152-55. The court concluded that, like the victim in Sharp, the witness "appeared" for cross-examination and the admission of the hearsay statements did not implicate the confrontation clause. Bueno, 358 Ill. App. 3d at 155.

Two cases from the First District have also reviewed similar Crawford claims. In People v. Desantiago, 365 Ill. App. 3d 855 (2006), the defendant was charged with first degree murder and attempted first degree murder after he drove a van onto a sidewalk where three men were standing, two of whom ran away and the third was struck and killed. At trial, a passenger in the defendant's van testified that he had been hit in the head with a shovel and was no longer able to recall the relevant events or his grand jury testimony. The State offered the witness's grand jury testimony as substantive evidence. On appeal, the defendant, citing to Crawford, argued that his cross-examination was limited and did not satisfy the confrontation clause of the sixth amendment. The reviewing court held that the confrontation clause was not violated, finding that "a defendant's rights under the confrontation clause are not absolute." Desantiago, 365 Ill. App. 3d 870. The court pointed out that the witness appeared and testified at trial, which permitted defendant to cross-examine him regarding his inconsistent testimony, prior arrests, drug and alcohol use on the day of the incident, and his bad memory. Desantiago, 365 Ill. App. 3d at 870.

17

Likewise, in People v. Bakr, 373 Ill. App. 3d 981 (2007), the defendant was on trial for first degree murder in a shooting that occurred outside a Dunkin Donuts. Two codefendants were called by the State. One testified that he could not recall his conversations with Chicago police officers or several parts of his videotaped statement. The second codefendant stated that he could not remember the details of the murder, his conversations with police and his videotaped statement. The videotaped statements of both codefendants were admitted over the defendant's objections. The defendant contended on appeal that his constitutional right to confront witnesses was violated because both of the codefendants testified that they did not recall making the videotaped statements and therefore he was unable to cross-examine them. Relying on Desantiago, the reviewing court held that "no confrontation clause problems exist simply because a declarant's alleged memory problems precluded the declarant from being cross-examined to the extent that defense counsel would have liked." Bakr, 373 Ill. App. 3d at 987. The court found that defense counsel was able to cross-examine the witnesses as to their motive to lie and bias and was able to impeach their credibility. The court concluded this cross-examination satisfied the confrontation clause. Bakr, 373 Ill. App. 3d at 988.

Defendant attempts to distinguish this line of cases by arguing that the decisions did not address "Crawford's requirement that the witness be available at trial to 'defend and explain' the prior statement." Defendant is referring to the following statement from Crawford:

> "Finally, we reiterate that, when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.

18

[Citation.] It is therefore irrelevant that the reliability of some out-of-court statements ' "cannot be replicated, even if the declarant testifies to the same matters in court." ' [Citation.] The [c]lause does not bar admission of a statement so long as the declarant is present at trial to *defend or explain* it." (Emphasis added.) Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.

However, the Supreme Court did not elaborate to what extent the witness must be able to "defend or explain" the prior statements nor does defendant cite any authority in which that phrase places additional requirements on cross-examination beyond the holdings of the aforementioned cases. Here, Lockwood appeared for cross-examination and answered all questions posed, even though his professed memory loss prevented him from recalling details from the shooting and his testimony. We cannot agree with defendant's argument that his confrontation rights were violated because he was unable to cross-examine Lockwood to the extent he would have liked.

Next, defendant contends that he was denied his right to a fair trial when the prosecutors made improper comments in closing arguments. Specifically, defendant asserts that the prosecutors' comments shifted the burden of proof, suggested that defendant should be convicted because Ramsay had been convicted, and misstated the facts and the law. The State maintains that the challenged comments were either proper, invited by defense counsel's argument or cured by the trial court.

19

Initially, the State points out that several of the complained-of comments were forfeited by defendant. "To preserve claimed improper statements during closing argument for review, a defendant must object to the offending statements both at trial and in a written posttrial motion." People v. Wheeler, 226 Ill. 2d 92, 122 (2007). Defendant failed to adhere to this rule for four of the comments raised on appeal, including all of the comments related to his argument that the State shifted the burden of proof. Further, defendant only makes a single passing reference to the plain error rule, but does not discuss the rule nor how it applies in the instant case. This reference is not sufficient to raise the plain error rule on appeal and it is waived. See People v. Nieves, 192 Ill. 2d 487, 503 (2000) (finding that the failure to argue "that the evidence was closely balanced nor explains why the error is so severe that it must be remedied to preserve the integrity of the judicial process" waived plain error on appeal); 210 Ill. 2d R. 341(h)(7). Therefore, our focus will be on the comments that were properly objected to and preserved. However, we review closing arguments in their entirety and the complained-of comments must be viewed in context. Wheeler, 226 Ill. 2d at 122. Thus, the forfeited comments will be considered as part of the whole closing argument and add context to the preserved statements. Wheeler, 226 Ill. 2d at 123.

Generally, a prosecutor is given wide latitude in closing arguments, although his or her comments must be based on the facts in evidence or upon reasonable inferences drawn therefrom. People v. Page, 156 Ill. 2d 258, 276 (1993). "The prosecutor has the right to comment on the evidence and to draw all legitimate inferences deducible therefrom, even if they are unfavorable to the defendant." People v. Simms, 192 Ill. 2d 348, 396 (2000). "Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used,

its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial." Simms, 192 Ill. 2d at 396. "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." Wheeler, 226 Ill. 2d at 123. "Prosecutorial misconduct warrants reversal only if it 'caused substantial prejudice to the defendant, taking into account the content and context of the comment[s], its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial.' " People v. Love, 377 Ill. App. 3d 306, 313 (2007), quoting People v. Johnson, 208 Ill. 2d 53, 115 (2004). "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." Wheeler, 226 Ill. 2d at 123. "The trial court may cure errors by giving the jury proper instructions on the law to be applied; informing the jury that arguments are not themselves evidence and must be disregarded if not supported by the evidence at trial; or sustaining the defendant's objections and instructing the jury to disregard the inappropriate remark." Simms, 192 Ill. 2d at 396-97.

Defendant contends that the State made improper comments on defendant's failure to deny his participation in the murder. The State maintains that the comments were proper and based on evidence.

Defendant complains of the following statements. In the closing argument, the prosecutor said, "He says, he never denies, he never denies that he didn't do it." Defense counsel objected and the trial court sustained his objection. Later, in rebuttal closing argument, the prosecutor

1-06-3495

stated:

> "You know, consider the defendant's own words to
> Detective Campbell back on the plane. How's Dwight doing, what
> did Dwight get, you got witnesses, who are the witnesses who say I
> did this. Not I didn't do it, I wasn't there —."

Again, defendant's attorney objected and the trial court sustained his objection. Defendant acknowledges that the objections were sustained, but argues the comments were improper because they directed the jury's attention to the fact that defendant did not testify and commented on his postarrest silence. The State responds that these statements were a proper comment on evidence elicited by defense counsel. However, the record indicates that the portion of Detective Campbell's testimony to which the State is referring occurred during redirect examination by the prosecutor. Thus, that portion of the State's response is without merit.

As mentioned above, the trial court sustained objections to both comments. The jury was instructed at the start of closing arguments that the statements by the attorneys "should be confined to the evidence and the reasonable inferences to be drawn from the evidence. Any argument made by the attorneys which is not based on the evidence should be disregarded." Later, the jury was similarly instructed by the court during jury instructions. The court also told the jury that the closing arguments "are not evidence, and any statement or argument by the attorneys which is not based on the evidence should be disregarded."

Defendant contends that the State impermissibly commented on his postarrest silence, in violation of Doyle v. Ohio, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). "There the

22

Supreme Court held that since a defendant's silence after being informed of his right to remain silent is 'insolubly ambiguous', and in light of the implied assurance given in the Miranda warnings that silence will carry no penalty, 'it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.' " People v. Bock, 242 Ill. App. 3d 1056, 1072 (1993), quoting Doyle, 426 U.S. at 617-18, 49 L. Ed. 2d at 98, 96 S. Ct. at 2244-45. The Illinois Supreme Court has held that it is error to comment on a defendant's postarrest silence, even if he did not remain silent yet did not incriminate himself. See People v. Herrett, 137 Ill. 2d 195, 214 (1990). However, the Herrett court went on to say that "a comment upon a defendant's post-arrest silence, while improper, is not an error of such magnitude as to clearly deprive the defendant of a fair trial" and found that the improper comments did not reach plain error. Herrett, 137 Ill. 2d at 215.

Here, the prosecutors were discussing defendant's statements made to Detective Campbell after he had received his Miranda rights. Defendant asked Detective Campbell several questions about codefendant Ramsay, the witnesses against him, and admitted to being at Union Hall that night, but he did not admit to committing the murder or arguing with McKinney. The prosecutors' comments that he did not deny the crime were improper. However, the two comments were made in separate parts of the State's closing arguments—the first by the prosecutor in the initial closing argument and the second by another prosecutor in the rebuttal closing argument. Both comments were immediately objected to by defense counsel and the objections were sustained.

Further, the evidence against defendant was compelling. Three witnesses testified that

23

they saw defendant argue with McKinney inside the club, then go outside. A red car pulled up, defendant walked toward the car and then turned and started firing a gun at McKinney. McKinney tried to take cover between cars, but defendant kept shooting. Defendant fired several shots and then got into the passenger side of the red car and left. While there were some inconsistencies in the witnesses' testimony, none of the inconsistencies were substantial or changed the sequence of the events on the night of July 17, 1993. Further, Sergeant Popelarz testified that Foster and Lockwood identified defendant in a photograph as the shooter shortly after the shooting in 1993. Since the trial court properly sustained objections to these comments and instructed the jury that the closing arguments are not evidence, and in light of the evidence presented, we do not believe that the jury would have reached a different verdict had these comments not been made.

Defendant also asserts that these comments also improperly directed the jury's attention to the fact that defendant did not testify. We disagree. "When determining whether the accused's right not to testify has been violated, a reviewing court must examine the challenged prosecutorial comments in the context of the entire proceeding." People v. Johnson, 208 Ill. 2d 53, 112 (2003). When we review the context in which these statements were made, it is clear that the prosecutors were discussing Detective Campbell's testimony and the statements defendant made to Detective Campbell after his arrest. These comments were not pointed at defendant's failure to testify.

Next, defendant argues that the prosecution improperly emphasized that the evidence presented had been sufficient to convict codefendant Ramsay. Specifically, defendant complains of the following comments:

"Mr. Ramsay is convicted.  Mr. Ramsay was out there."

"We don't convict people based on bad evidence, is that what I just heard counsel say?  Maybe we ought to tell that to Dwight Ramsay, huh?"

"This is Wade Hampton's trial.  Dwight Ramsay has had his trial."

Defendant's attorney objected to all three comments, but was overruled on the first and third comments and was sustained as to the second.  We will consider the comments with the overruled objections first.  The first comment occurred during the first part of the closing arguments and was part of the following paragraph:  "When he [defendant] is turning, coming back, Mr. Ramsey tells you.  Mr. Ramsey is convicted.  Mr. Ramsey was out there.  Mr. Foster tells you he was out there.  Mr. Lockwood—"  The prosecutor was interrupted by defendant's objection.

The third comment came toward the end of the rebuttal closing argument:  "This is Wade Hampton's trial.  Dwight Ramsay has had his trial.  Lockwood wasn't on trial and Foster wasn't on trial."  After the defendant's objection was overruled, the prosecutor continued:  "They were attacked as if they were on trial.  The only person on trial Wade Hampton [*sic*]. Our system allows for that."

Neither of these comments was asking the jury to consider Ramsay's conviction as proof against Hampton.  In both situations, the prosecutors were discussing all of the occurrence witnesses.  While the first comment's reference to Ramsay's conviction is questionable, but when viewed in context, the prosecutor only made a passing reference to it while stating that the

witnesses were present at the time of the shooting. In the third instance, the mention of Ramsay's trial was used to point out that defendant was the only one on trial that day as a way of putting defense counsel's credibility attacks against the witnesses in perspective. There was nothing improper in this comment.

The second comment by the prosecutor was made at the start of the rebuttal closing argument after defendant's attorney had argued that the evidence in the case was insufficient and the witnesses were not credible. The prosecutor responded by saying, "We don't convict people based on bad evidence, is that what I just heard counsel say? Maybe we ought to tell that to Dwight Ramsay, huh?" It is true that "[a] prosecutor's comments during rebuttal argument will not be deemed improper, however, if they were invited by defense counsel's closing argument." Love, 377 Ill. App. 3d at 313; see also Bakr, 373 Ill. App. 3d at 990. However, this statement went beyond defense counsel's invitation that the evidence was insufficient, but our analysis does not end here. This improper comment was immediately objected to and the objection was sustained. Moreover, in addition to the previously mentioned instruction that arguments are not evidence, the trial court also gave the jury a specific instruction regarding its consideration of Ramsay's conviction:

> "Evidence that a witness may have been convicted of an
> offense may be considered by you only as it may affect the
> believability of the witness. You are not to consider the fact of
> Dwight Ramsay's conviction as evidence against the defendant.
> The defendant is entitled to have his case decided on the evidence

26

and the law that applies to him."

Any error made by the prosecutor's comment was cured through the sustained objection and multiple jury instructions. Given the evidence against defendant, the jury's verdict would not have been different absent this remark by the prosecutor.

Defendant's final argument is that the State misstated the evidence and the law in an attempt to manipulate the jury's evaluation of the witness testimony. Specifically, defendant points to these comments for his assertion: (1) Foster "was saying the same thing then that he said to you" and (2) the prosecutor's multiple references that the jury only needed to believe one witness in order to reach a guilty verdict. However, defendant's claims against the comment about Foster's testimony were not properly preserved because he did not object or raise any objection in a posttrial motion and will not be considered on appeal. See Wheeler, 226 Ill. 2d at 122.

Defendant's remaining argument is premised on the following comments, in context:

"And if you believe that Wade Hampton was at the party and shot

Terrance McKinney, the defendant is guilty of first degree murder.

If you believe that because you believe one of the witnesses,

a single finger identification with all the things, all the supporting

items, the bullets, everything else is sufficient —"

The prosecutor was interrupted by defense counsel's objection, which was overruled. Later, the prosecutor made a similar comment:

"Now the People have to prove certain propositions. And

those propositions are to sustain the charge of first degree murder, the State must prove the following propositions: First, that the defendant performed the acts which caused the death of Terrance McKinney. If you believe the witnesses, if you believe one of the witnesses, he did.

Especially with all the circumstantial evidence I talked about earlier, the circumstantial evidence you might be able to pick out on your own."

Defendant contends that these statements suggested to the jury that it "should simply disregard any testimony it found troubling." Contrary to defendant's argument, the prosecutor did not tell the jury to select one of the stories presented by the witnesses and disregard the others. Rather, the prosecutor was arguing that if the jury believed defendant was guilty because it believed one of the witnesses, that was enough to find defendant guilty. That is a proper statement of law. "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." People v. Castillo, 372 Ill. App. 3d 11, 20 (2007); People v. Smith, 185 Ill. 2d 532, 541 (1999). Thus, the comments were not improper.

As we have concluded that none of the comments deprived defendant of a fair trial, we do not find that any cumulative error existed. The evidence presented by the State was substantial and more than sufficient to find defendant guilty while the trial court properly sustained objections to the improper comments and instructed the jury that closing arguments were not evidence and that Ramsay's conviction could not considered as evidence against defendant. Any improper

28

comments by the State were cured by these actions.  Therefore, we conclude that the result of the trial would not have been different absent the improper comments.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

O'MALLEY, P.J. and J. GORDON, J., concur.