THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAROLD YARBROUGH, Defendant-Appellant.

Fifth District   No. 5—86—0378

Opinion filed March 2, 1988.

826

Donald E. Groshong, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Darold Yarbrough, was convicted on May 23, 1986, in the circuit court of Fayette County of theft by deception and criminal damage to property. He was sentenced to a one-year term of probation, as a condition of which he was to serve 90 days' imprisonment in the county jail. Defendant was also ordered to pay a $1,000 fine for each offense, and court costs. Defendant appeals his convictions, arguing (1) that certain out-of-court statements of a prosecution witness were improperly admitted into evidence against him; (2) that he was not proved guilty beyond a reasonable doubt; and (3) that the prosecutor's closing argument was improper and prejudicial.

Defendant was charged with aiding and abetting Paul Kirkman in perpetrating a fraud against Aetna Insurance Company. Specifically, defendant and Paul Kirkman were indicted for theft in that they knowingly obtained control over $1,880.41 belonging to Aetna Insurance

Company by causing a 1982 Buick Regal automobile to be towed, damaged and falsely reported stolen. They were also indicted for criminal damage to property in that they knowingly damaged a 1982 Buick Regal automobile with intent to defraud an insurer, Aetna Insurance Company. Paul Kirkman entered a negotiated guilty plea to both charges and agreed to testify truthfully at defendant's trial.

The following evidence was adduced at trial. At approximately 8 a.m. on December 11, 1984, Mt. Vernon city police officer Albert Boyd received a call from Paul Kirkman. Officer Boyd met Kirkman at the Best Inns Motel in Mt. Vernon, where Kirkman reported that his white 1982 Buick Regal had been stolen. Kirkman provided Officer Boyd with the license plate number. Officer Boyd entered the information in the police computer, indicating that the described vehicle had been reported stolen.

State Trooper Jack Archer testified that while on duty on December 12, 1984, at approximately 2:18 a.m., he discovered Kirkman's car on the north side of Interstate 57 near the Kinmundy exit. The passenger side window had been broken in, the ignition switch had been broken off and the right rear tire was flat. The vehicle was towed to a nearby garage.

Paul Kirkman testified that he owns a 1982 Buick automobile which he had reported stolen to the Mt. Vernon city police. Approximately one week before it was reported stolen, the vehicle had been towed by an employee of defendant from Kirkman's house to defendant's used car lot. This was done pursuant to Kirkman's request because the engine in the car was "locked up." The car sat on defendant's car lot for four or five days. During that time, Kirkman and defendant had a conversation at defendant's office in which Kirkman asked defendant to have the vehicle towed to Interstate 57 and left there so that Kirkman could report it stolen to his insurer. Kirkman hoped that the insurer would then pay the damages apparently caused when the car was stolen, i.e., pay for a new engine. Defendant indicated that he would be glad to help Kirkman.

Kirkman told defendant that he would spend the night in a motel in Mt. Vernon and report the vehicle stolen the next morning. The last time Kirkman saw the vehicle before he reported it stolen there was no damage to it other than the locked up engine. Kirkman gave no one permission to damage it further. Kirkman further testified that the odometer had been rolled back from 65,000 miles to 35,000 miles without his permission or knowledge. Kirkman had not agreed to pay defendant for his help.

Charles Pryor testified that he was employed by defendant in De-

cember 1984, as a mechanic and tow truck driver. In December 1984, Pryor was told by defendant to pick up Kirkman's car and tow it to defendant's used car lot. After towing the car to the lot, and at defendant's direction, Pryor rolled back the odometer from "60 some thousand miles" to "30 some" thousand miles. Pryor also inspected the engine of the car and found it to be "locked." The next day, Kirkman came out to the car lot, and he and Pryor put a new license plate sticker on the car. Pryor testified that he had known Kirkman for 20 to 25 years.

The car sat on the lot for four or five days. On a Friday evening, Pryor observed the car being towed behind defendant's tow truck on Route 51 to the Kinmundy blacktop. The next morning, Pryor talked to Roger Tucker, another employee of defendant, about the car. Pryor became angry when he learned what had been done with the car. He confronted defendant and Kirkman in defendant's office. Defendant told Pryor not to worry about it, that it was "[j]ust a little insurance deal." Pryor then went back to work. Shortly thereafter, defendant came out to where Pryor was working and stated that it wasn't worth it. Pryor asked defendant what he was going to get, and defendant responded $200.

The first day of trial, the State called Roger Tucker to the witness stand. Tucker testified that he worked part time for defendant. He denied that he had ever lived in a house trailer owned by defendant, or driven a car owned by defendant. He refused to answer any other questions. His refusal was not based on his privilege against self-incrimination. He was offered appointed counsel, advised of possible sanctions, and still refused to answer questions. The court found him in contempt and sentenced him to jail until he agreed to testify.

The next day, Tucker agreed to testify. He stated that he worked part time for defendant driving a tow truck. He denied that he had worked for defendant in December 1984 and denied that on December 11 or 12, 1984, he had towed a vehicle for defendant. He denied that he had ever damaged a 1982 Buick Regal. He denied knowing Charlie Pryor. He denied that he had ever spoken with State police officer Gary Leming about a 1982 Buick Regal. Tucker stated that he did not remember testifying before the grand jury in this cause. The prosecutor then began questioning Tucker regarding a statement he had made to Officer Leming and his testimony before the grand jury. To every question, Tucker responded that he did not remember. During the course of this questioning, the prosecutor read Tucker's statement and grand jury testimony into the record. Tucker finally stated that he refused to answer any further questions and asked to be returned to

jail.

Outside the presence of the jury, the prosecutor moved to admit as substantive evidence pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) the original transcript of Roger Tucker's grand jury testimony and his statement to Officer Leming. Defendant objected that these out-of-court statements constituted inadmissible hearsay and that they were cumulative of each other. The court held that the out-of-court statements were admissible under section 115—10.1 as prior inconsistent statements. Tucker was tendered to defendant for cross-examination with respect to the out-of-court statements, but defendant declined to cross-examine. The transcript of Tucker's grand jury testimony and his written statement to Officer Leming were submitted to the jury as exhibits and were taken to the jury room during deliberations.

In his out-of-court statements, Tucker had stated that in December 1984, he had been employed by defendant, who told him to tow Kirkman's automobile to Interstate 57 near the Kinmundy exit, and leave it on the northbound shoulder. Defendant also told Tucker to knock out the passenger window, pull out the ignition switch and dent the trunk. Tucker did these things, and also let the air out of the right rear tire. When Tucker returned home, he called defendant and told him where he had left the car. In his grand jury testimony, Tucker stated that he had told Charlie Pryor about what he had done with the car, and that Pryor had gotten upset because his fingerprints were on the car. In his statement to Officer Leming, Tucker stated that defendant provided Tucker with a place to live, paid his utilities, gave him a car to drive and $120 per week. He also said that Charlie Pryor had told him that Kirkman had rented a motel room in Mt. Vernon and reported his car stolen. Finally, in his grand jury testimony, he stated that the morning that he was to testify, defendant had told him to testify that Kirkman had come and driven the car away from defendant's lot.

Defendant testified in his own defense. He testified that in December 1984, he owned two tow trucks. All of his employees had access to the keys to the tow trucks. All of the employees sometimes used the tow trucks in the evening hours. Defendant testified that he had known Paul Kirkman for 45 years, but that they were not good friends.

In December 1984, Kirkman telephoned defendant to ask if defendant could find an engine for his car for less than $400. Defendant agreed to have Charlie Pryor tow Kirkman's car to his used car lot and try to find an engine for it. Defendant stated that once the car was on his lot, he never went near it. Defendant was unsuccessful in his at-

tempts to locate an engine. A few days later, defendant noticed that the car was gone from his lot. Defendant had never asked any of his employees to remove the car. He denied that Kirkman had asked him to drop the car off on Interstate 57, or that he knew about any scheme to defraud Kirkman's insurer. Defendant denied knowing anything about the odometer being rolled back, or about the car being damaged. Defendant admitted that Roger Tucker was his employee, that Tucker lived in defendant's house trailer and that defendant provided Tucker with a car to drive.

Defendant first argues on appeal that Tucker's out-of-court statements were hearsay, and that they were improperly admitted into evidence against him. He argues that the statements did not meet the requirements of section 115—10.1 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) in that they were not inconsistent with Tucker's testimony at trial and Tucker was not subject to meaningful cross-examination with respect to the out-of-court statements. Alternatively, defendant argues that section 115—10.1 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) is unconstitutional in that it violates defendant's right of confrontation and, by legislating evidentiary standards, it violates the doctrine of separation of powers. Finally, defendant argues that the out-of-court statements are cumulative of each other and that the written statements should not have been submitted to the jury as exhibits, but should have been read aloud to the jury in open court.

■ Section 115—10.1 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) provides that an out-of-court statement of a witness shall not be made inadmissible by the hearsay rule if (1) the statement is inconsistent with the witness' testimony at trial, (2) the witness is subject to cross-examination concerning the statement, and (3) the statement was made under oath at a trial, hearing or other proceeding, or narrates, describes or explains an event of which the witness had personal knowledge and the statement is proved to have been written or signed by the witness. The parties hereto do not contest that Tucker's out-of-court statements satisfy the third requirement of section 115—10.1. However, defendant argues that the statements do not satisfy the first and second requirements of section 115—10.1.

■ We find that Tucker's out-of-court statements do satisfy the first requirement of section 115—10.1 in that they are at least partially inconsistent with his testimony at trial. At trial, Tucker denied that he had worked for defendant in December 1984, that he had towed a vehicle for defendant in December 1984, and that he had damaged a 1982 Buick Regal. He denied knowing Charlie Pryor and denied living in defendant's trailer or driving defendant's car. In his out-of-court state-

ments, Tucker admitted all of these things.

■ However, we agree with defendant that Tucker was not subject to meaningful cross-examination concerning the out-of-court statements. We find the instant case to be similar to *Douglas v. Alabama* (1965), 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074, in which a witness invoked his privilege against self-incrimination and refused to answer questions. The prosecutor questioned the witness at length concerning an out-of-court statement by the witness which implicated the defendant. During this questioning, the out-of-court statement was read into the record by the prosecutor. The United States Supreme Court held that this procedure violated defendant's constitutional right of confrontation. Although the witness was present at trial and subject to cross-examination, his refusal to answer questions with respect to the out-of-court statement denied defendant his right to full and effective cross-examination. The court pointed out that the purpose of cross-examination in such a case is to test the truth of the out-of-court statement, and that this can only be done when the witness affirms the statement as his own, or denies that he made the statement.

We think a similar problem arises where a witness, although present at trial and subject to cross-examination, claims that he cannot remember making the out-of-court statement or the substance of that statement. Obviously, a defendant cannot cross-examine a witness with respect to the truth or falsity of an out-of-court statement of which the witness has no memory. See also *People v. Peebles* (1983), 120 Ill. App. 3d 376, 457 N.E.2d 1318 (where a witness' direct testimony was stricken when he invoked his privilege against self-incrimination on cross-examination).

In the instant case, Roger Tucker testified that he did not remember testifying before the grand jury and that he did not remember the substance of that testimony or of his statement to Officer Leming. Tucker was not subject to cross-examination at the time the out-of-court statements were made. By claiming a loss of memory at trial, Tucker effectively made impossible any cross-examination with respect to the truth or falsity of the out-of-court statements.

■ The State argues that defendant has waived any error with respect to the admission into evidence of Tucker's out-of-court statements by his failure to even attempt cross-examination. We do not agree. To attempt cross-examination of Tucker would have been a futile act in light of Tucker's obstinate refusal to answer questions and his demand to be returned to jail. The law does not require the commission of futile acts. *People v. McNutt* (1986) 146 Ill. App. 3d 357, 368, 496 N.E.2d 1089, 1097.

■ Thus, we find that the second requirement of section 115—10.1 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) was not satisfied and Tucker's out-of-court statements were improperly admitted into substantive evidence against defendant. This error was prejudicial to defendant and mandates reversal and remand of this cause for a new trial.

In light of this finding, we find it unnecessary to address defendant's arguments the two out-of-court statements were cumulative of each other and should not have been submitted to the jury as exhibits. We also decline to address defendant's alternative argument that section 115—10.1, properly applied, violates the confrontation clause of the sixth amendment and the due process clause of the fourteenth amendment of the United States Constitution, in light of our finding that section 115—10.1 was not properly applied in this case.

■ Defendant also argues that section 115—10.1 violates the doctrine of separation of powers. (U.S. Const., art. II, §1.) We do not agree. It is well settled that the legislature has the power to prescribe new, and alter existing, rules of evidence or to prescribe methods of proof. *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 140, 461 N.E.2d 410, 412.

■ Defendant's second argument is that he was not proved guilty beyond a reasonable doubt and that reversal without remand is therefore required. Again, we do not agree. Even without the improperly admitted evidence, we feel that there is sufficient evidence, when viewed in the light most favorable to the prosecution, for a rational jury to have found the essential elements of both offenses beyond a reasonable doubt. It is not the function of a reviewing court to retry the defendant. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

Defendant's final argument on appeal is that the prosecutor's closing argument was improper and prejudicial. We find it unnecessary to discuss this issue. Because Tucker's out-of-court statements were improperly admitted against defendant, this cause must be remanded for a new trial. The alleged errors in the prosecutor's closing argument are not likely to be repeated.

For the foregoing reasons, the judgment of the circuit court of Fayette County is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARRISON, P.J., and LEWIS, J., concur.