2025 IL App (1st) 232118-U
Order filed: May 22, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-2118

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 1483401 |
| | ) | |
| JESSE CASTILLO, | ) | Honorable |
| | ) | Steven J. Rosenblum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirmed defendant's convictions for first-degree murder and aggravated leaving the scene of an accident, holding that the State proved him guilty beyond a reasonable doubt and that the trial court committed no evidentiary error or *Krankel* violation.

¶ 2    Micheal Lumino and Stephanie Gallegos were killed in 2017 when defendant, Jesse Castillo, rammed his vehicle into the back of the automobile they were riding in, causing them to crash into a building. A jury convicted defendant of Lumino's and Gallegos's first-degree murders and aggravated leaving the scene of an accident involving death or personal injury and he was sentenced to natural life imprisonment. On appeal, defendant argues that the trial court erred by admitting a witness's prior statements identifying him and by failing to appoint new counsel and

conduct an evidentiary hearing under *People v. Krankel*, 102 Ill. 2d 181 (1984), into his posttrial claim of ineffective assistance of counsel. Defendant also contends that the State failed to prove him guilty of first-degree murder beyond a reasonable doubt and that we should reduce his murder convictions to reckless homicide. We affirm.

¶ 3     At trial, Angel Perez testified that on July 10, 2017, he was driving his Toyota Corolla with his girlfriend, Samantha Mercado. They drove to Michael Lumino's apartment at about 1 a.m. Lumino introduced them to his wife, Stephanie Gallagos, and they all had a shot of cognac and talked for about 20 minutes. Then they got into Perez's vehicle; Perez was driving, Mercado was in the front passenger seat, Lumino was in the rear passenger seat and Gallagos was sitting in the rear middle seat.

¶ 4     They were driving for about five minutes in the city of Summit when they were struck from behind while stopped at a red light on Archer Road at approximately 1:45 a.m. Perez turned to see who had hit them and he observed a green truck with a custom silver grille in the shape of flames. The truck was high off the ground, much higher than his Toyota and therefore Perez could not see inside to view the driver. However, Perez saw a hand jut out of one of the truck's windows and make a gang sign. Perez was generally familiar with gang signs because he used to be in a gang. Perez deduced from the gang sign that the truck had intentionally hit him, so he quickly drove away at speeds of about 25 to 30 miles per hour. The truck followed closely behind. Perez tried to get away by moving to the right or left, but each time the truck continued to follow him. After traveling for one or two blocks, Perez attempted to make a turn and then the truck struck him again, causing the Toyota to career into a building. Lumino and Gallagos were killed as a result of the crash, while Perez and Mercado suffered serious injuries.

¶ 5    On cross-examination, Perez testified that earlier in the evening he had three alcoholic drinks and "possibly" smoked marijuana. However, he was not intoxicated.

¶ 6    Mercado testified that on July 10, 2017, she was a passenger in Perez's automobile. Perez was driving, and Lumino and Gallagos were in back. They were struck from behind by a vehicle, causing her body to "jerk." They were subsequently struck a second time, after which Mercado woke up in the hospital. She has no other memories of the incident.

¶ 7    Fred Ortman testified that at about 1:45 a.m. on July 10, 2017, he was driving near 57th Street and Archer Road and stopped at a red light. He heard the sounds of revving engines behind him. Two vehicles then quickly passed him on the left at a speed of over 60 miles per hour. The first vehicle was a white sedan; the second vehicle right behind it was a green SUV. The two vehicles were only about a foot apart from each other. They each took a right turn on Archer Road, and Ortman lost sight of them.

¶ 8    Ortman subsequently turned right onto Archer Road and saw that the white sedan had crashed into a building. The green SUV was gone. A police car was at the scene.

¶ 9    Officer Russell Delude testified that just before 1:45 a.m. on July 10, 2017, he was in his squad car traveling west on Archer Road near Harlem Avenue when he heard the sound of "a loud exhaust coming from a vehicle." He then observed a white sedan in the median lane being closely followed by a dark colored SUV in the curb lane; the sedan and SUV were not even a car length apart. The two vehicles were traveling eastbound in the officer's direction at about 50 miles per hour. As they approached 73rd Street, the white sedan attempted to change lanes, moving from the median lane into the curb lane in front of the SUV. The SUV then rammed into the sedan, causing it to lose control and crash into a building. The SUV drove away.

¶ 10    Delude drove to the white sedan and saw that it had sustained "extensive heavy damage" and that the occupants were still inside the vehicle. He contacted dispatch. Other law enforcement personnel as well as civilians arrived at the scene. Delude identified Russell Wilusz as a civilian who approached and spoke with him. The conversation was recorded by the officer's squad car camera.

¶ 11    At trial, Wilusz testified he suffered a brain injury in 2020 as a result of a car accident, rendering him with no memory of the year 2017 and thus no memories of witnessing the collision between defendant's SUV and Perez's vehicle or speaking with Delude.

¶ 12    The State sought to admit the recording of Delude's conversation with Wilusz. Defendant objected on hearsay and confrontation clause grounds. The State responded that Wilusz's recorded statements were admissible under section 115-12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-12 (West 2022)) as statements of identification and also were admissible under section 115-10.1 of the Code (725 ILCS 5/115-10.1 (West 2022)) as prior inconsistent statements. The court admitted the video. The relevant clips were played for the jury and show that Wilusz told the officer at the scene that he had been driving his truck and saw the SUV strike the sedan earlier in the evening, before the second strike on Archer Road which propelled the sedan into the building.

¶ 13    Numerous surveillance videos captured the chase leading to the crash and were played for the jury. A security camera outside the Summit Police Department shows the two vehicles speeding within feet of each other and Wilusz's truck trailing behind. Surveillance video from a nearby funeral home shows the vehicles speeding down Archer Road and captures the moment when defendant's vehicle collides into the back of Perez's vehicle without slowing down, causing Perez's automobile to smash into a building.

¶ 14    A red-light camera at Harlem and Archer recorded defendant's flight after the collision. The video shows a passenger jumping out of defendant's SUV in the middle of the intersection and running across Harlem. Defendant then veers the SUV across the street onto a sidewalk and into a fence. A second passenger falls out of the SUV and runs off. Defendant speeds away in a different direction.

¶ 15    Officer Andrew White testified that on July 30, 2017, the SUV was recovered. The title of the SUV showed that defendant was the owner. Investigator Martin Juppe testified that a wallet containing defendant's driver's license was discovered inside the vehicle.

¶ 16    Officer Melchor Ortiz testified that he was assigned the case. He reviewed the video evidence and spoke with Perez and Mercado at the hospital on July 17. Perez never told him that the incident was gang-related or that he saw any gang signs being thrown. Ortiz subsequently spoke with Wilusz over the phone on July 20. Wilusz described the driver of the SUV as "being male Hispanic, long hair, clean-shaven and age range of about 20 to 25 years, wearing a blue shirt." Ortiz testified that on August 4, 2017, he and Officer Angel Sarabia met with Wilusz and showed him a photo array. Wilusz identified defendant.

¶ 17    Officer Sarabia testified that on August 4, 2017, Wilusz identified defendant in a photo array as the driver of the green SUV that struck Perez's Toyota Corolla. The officers made a video recording of Wilusz when he identified defendant during the photo array. The court admitted the video into evidence under sections 115-10.1 and 115-12 of the Code.

¶ 18    Assistant States Attorney (ASA) Joy Tolbert-Nelson testified that on September 15, 2017, she and Detective Ortiz spoke with Wilusz and he gave a videotaped statement. The court admitted the video into evidence under sections 115-10.1 and 115-12. During the recorded statement, Wilusz described how he was driving his truck on July 10, 2017, when Perez's automobile drove

up beside him. Perez's loud muffler drew his attention. The green SUV drove up behind Perez. Wilusz looked over at the driver of the SUV, who Wilusz described as a clean-shaven Hispanic man in his early twenties, wearing a blue shirt. Wilusz made eye contact with the driver for about 30 seconds and noticed he had a look on his face like he was "just going to do something." The SUV subsequently rammed into the back of Perez's automobile. Perez quickly drove away, with the SUV chasing after him. Wilusz momentarily lost sight of the chase when the vehicles rounded a corner but soon came upon the crash site.

¶ 19    In the video, Wilusz identifies the photo array he had been shown on August 4 and states that defendant was the driver of the SUV. Wilusz acknowledges that he described defendant as clean-shaven, but that the photograph he identified in the array showed defendant with facial hair.

¶ 20    Officer Theodore Pappas testified as an expert in traffic crash reconstruction and rendered the opinion that defendant intentionally caused his SUV to strike the back end of Perez's automobile two times, and that the second strike caused Perez to lose control of his vehicle and smash into a building.

¶ 21    Following all the evidence, the jury convicted defendant of the first-degree murder charges, as well as aggravated leaving the scene of an accident involving the death of Lumino and Gallegos and aggravated leaving the scene of an accident involving injury to Perez and Mercado.

¶ 22    After trial but before sentencing, defendant filed a motion alleging that his trial counsel provided ineffective assistance for, among other reasons, failing to investigate a potential exculpatory witness who claimed to have seen the incident and stated in an affidavit that the driver of the green SUV was a female. The trial court held a preliminary *Krankel* hearing into the factual basis of defendant's ineffective assistance claims, during which the court questioned defendant and defense counsel about those claims and determined that they lacked merit and/or pertained to

matters of trial strategy. Accordingly, the court denied the *Krankel* motion without appointing new counsel and sentenced defendant to natural life in prison. Defendant appeals.

¶ 23 First, defendant argues that the trial court erred by admitting Wilusz's out-of-court statements to the officers and ASA identifying him as the driver of the SUV under sections 115-10.1 and 115-12 of the Code (725 ILCS 5/115-10.1 and 115-12 (West 2022)). Section 115-10.1 provides that a prior statement is not rendered inadmissible by the hearsay rule if (1) the witness is subject to cross-examination concerning the statement, (2) the statement is inconsistent with the witness's testimony at trial, (3) the statement describes an event of which the witness has personal knowledge, and (4) the statement was accurately videotaped. *Id.* § 115-10.1. Section 115-12 provides that "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." *Id.* § 115-12. The trial court's decision concerning the admissibility of evidence is reviewed for an abuse of discretion. *In re Brandon P.*, 2014 IL 116653, ¶ 45.

¶ 24 Defendant does not dispute that Wilusz's prior statements to the officers and ASA identifying defendant as the driver of the SUV were inconsistent with his trial testimony, described an event of which he had personal knowledge, and were accurately videotaped as required by section 115-10.1. Nor does he dispute that Wilusz's statements were ones of identification as required by section 115-12. Defendant's argument here centers solely on whether Wilusz's prior statements were inadmissible because he claimed at trial to have no memory of witnessing the collision or making those statements. Defendant contends that Wilusz's professed total memory loss effectively rendered him unavailable for cross-examination on his prior statements and, as such, that the statements were inadmissible under sections 115-10.1 and 115-12.

¶ 25    A number of United States Supreme Court, Illinois Supreme Court, and Illinois Appellate Court cases, beginning with *United States v. Owens*, 484 U.S 554 (1988), have rejected defendant's argument that a witness's memory loss renders him unavailable for cross-examination under sections 115-10.1 and 115-12. In *Owens*, the State charged the defendant with assault with intent to commit murder for allegedly beating the victim with a metal pipe on April 12, 1982. *Id.* at 556. At trial, the victim stated that he remembered identifying the defendant during an interview on May 5 with an FBI agent. *Id.* However, on cross-examination, he stated that he no longer remembered seeing his assailant. *Id.* The defendant was convicted and sentenced to 20 years' imprisonment. *Id.*

¶ 26    On appeal, the Supreme Court considered whether the victim's prior statement identifying the defendant during the May 5 interview was admissible under Rule 801(d)(1)(C)  of the Federal Rules of Evidence, which is similar to section 115-12 of the Code in that it allows for the admission of a statement of identification where the declarant testifies at trial and is subject to cross-examination concerning the statement. *Id.* at 561. The defendant argued that the victim's memory loss rendered him unavailable for cross-examination as required for admission of the statement of identification under Rule 801(d)(1)(C). *Id.* at 561.

¶ 27    The Supreme Court held that the statement of identification was admissible under Rule 801(d)(1)(C), stating:

> "It seems to us that the *** natural reading of 'subject to cross-examination concerning the statement' includes what was available here. Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions. *** [L]imitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree

that meaningful cross-examination within the intent of the Rule no longer exists. But that effect is not produced by the witness' assertion of memory loss—which *** is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." *Id.* at 561-562.

¶ 28 In *People v. Flores*, 128 Ill. 2d 66 (1989), the defendant was charged with armed robbery and murder. *Id.* at 75. At trial, a witness testified that he could not recall having a conversation with the defendant about the victim's death. *Id.* at 78. Over the defendant's objection, the court admitted the witness's prior testimony before the grand jury as an inconsistent statement pursuant to section 115-10.1. *Id.* at 86. In his grand jury testimony, the witness stated that the defendant admitted to the shooting. *Id.* at 79. On appeal, the defendant argued that the witness's grand jury testimony was inadmissible under section 115-10.1 because his memory loss deprived defendant of the opportunity to cross-examine him. *Id.* at 88.

¶ 29 Citing *Owens*, the Illinois Supreme Court held that the trial court did not err in admitting the witness's grand jury testimony under section 115-10.1, where the witness was placed on the stand, under oath, and responded willingly to questions about the prior testimony. *Id.* at 90. In so holding, the Illinois Supreme Court noted *Owens'* statement that a witness's memory loss is often the very result sought to be produced on cross-examination and can be effective in destroying the force of the prior statement. *Id.*

¶ 30 In *People v. Watkins*, 368 Ill. App. 3d 927 (2006), the defendant was tried for aggravated battery. *Id.* at 928. At trial, two witnesses testified "I don't recall," "I don't remember," or "I can't remember," to virtually every question asked of them. *Id.* at 929. Pursuant to section 115-10.1, the court admitted the witnesses' grand jury testimony and a statement to police implicating the defendant. *Id.* On appeal from her conviction, the defendant argued for reversal because the

witnesses were not subject to meaningful cross-examination, given their memory loss, and thus their prior statements to the grand jury and police were inadmissible under section 115-10.1. *Id.* at 930. Citing *Owens* and *Flores*, we affirmed, noting that a witness's assertion of memory loss is often the goal of cross-examination and thus section 115-10.1 was satisfied when the witnesses appeared at trial and willingly answered defense counsel's questions and admitted their memory loss. *Id.* at 931-32.

¶ 31    *Owens*, *Flores*, and *Watkins* establish that the cross-examination requirements of sections 115-10.1 and 115-12 are fulfilled when the witness is placed on the stand, under oath, and responds willingly to questions, even when he professes memory loss. As long as the defendant is given the opportunity to question the witness about the basis and extent of the memory loss, the cross-examination elements of sections 115-10.1 and 115-12 are met.

¶ 32    In the instant case, Wilusz took the stand under oath and willingly answered the questions posed to him by the State during direct examination. The first question asked of him was what he did for a living. He answered that he was a truck driver. When asked how long he had been a truck driver, Wilusz explained that he did not know because he was in an automobile accident in 2020 which rendered him unable to remember anything before the year 2020. The State asked Wilusz a series of questions regarding whether he remembered witnessing the collision and speaking with a police officer in the immediate aftermath, and viewing a photo array on August 4, 2017, and giving a video-recorded statement to ASA Tolbert-Nelson on September 15, 2017. Wilusz repeatedly answered that he did not remember. The State asked whether Wilusz has viewed the video from August 4 and he responded affirmatively. When asked if he recognized himself in the video, Wilusz testified, "I guess it was me. I'm not sure. It looked like me." Wilusz acknowledged that he identified himself by name in the video. The State also asked whether Wilusz viewed the

video from September 15 and he responded affirmatively. He stated that he identified himself by name in the video and that the person in the video "looks like me."

¶ 33    The State showed Wilusz several exhibits, including still photographs of his truck and defendant's SUV, the photo array from which he identified defendant, and the photo advisory form. Wilusz testified that he recognized his signature on each of the exhibits, although he did not remember signing them.

¶ 34    This record shows that although Wilusz professed to not being able to remember witnessing the collision and making statements to the officers and the ASA identifying defendant, he willingly answered the questions posed to him by the State and acknowledged his signature on several exhibits utilized by the officers and the ASA during the identification process. Defendant was thereafter given the opportunity to cross-examine Wilusz, during which defendant could have further inquired about the basis and extent of his memory loss, and the circumstances surrounding his signing of the photo array and advisory forms. Defendant did not take advantage of the opportunity, instead choosing to forego any cross-examination of Wilusz. The trial court did not abuse its discretion in admitting Wilusz's prior statements under section 115-10.1 and section 115-12, where there is no dispute that the statements were inconsistent with Wilusz's trial testimony (for purposes of section 115-10.1) and identified defendant (for purposes of section 115-12), and where the record shows that defendant was given the opportunity to challenge Wilusz's credibility and his professed memory loss through cross-examination.

¶ 35    Defendant argues that *People v. Yarbrough*, 166 Ill. App. 3d 825 (1988), compels a different result. In *Yarbrough*, the defendant was convicted of theft by deception and criminal damage to property. *Id.* at 826. At trial, a witness denied any knowledge of the alleged crimes and denied any memory of his prior grand jury testimony implicating the defendant. *Id.* at 828. The

court subsequently admitted the witness's grand jury testimony as prior inconsistent statements under section 115-10.1. *Id.* at 829. The appellate court reversed and remanded, holding that "a defendant cannot cross-examine a witness with respect to the truth or falsity of an out-of-court statement of which the witness has no memory." *Id.* at 831. *Yarbrough* predates *Flores* and is no longer followed. See *e.g.*, *People v. Hampton*, 387 Ill. App. 3d 206, 213 (2008) (declining to follow *Yarbrough* in light of *Owens*, *Flores*, and their progeny holding that a witness with memory loss is subject to cross-examination for purposes of sections 115-10.1 and 115-12 when he is placed on the stand, under oath, and responds willingly to questions).

¶ 36     Next, defendant argues that even if Wilusz's memory loss did not render him unavailable for cross-examination for purposes of sections 115-10.1 and 115-12, such memory loss effectively rendered him unavailable for cross-examination for purposes of the confrontation clause. The confrontation clause of the sixth amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that under the confrontation clause, the testimonial hearsay statements of a witness who is unavailable at trial may not be admitted against a criminal defendant unless he had a prior opportunity for cross-examination.  *Id.* at 51-54. The *Crawford* court also held that when the declarant appears for cross-examination at trial, the confrontation clause places no constraints on the use of his prior testimonial statements. *Id.* at 59 n.9. Defendant contends that for all practical purposes, Wilusz did not appear for cross-examination where he claimed to have no memory of witnessing the collision or making the prior out-of-court statements identifying defendant as the

driver of the SUV. As such, defendant argues that the admission of Wilusz's out-of-court statements violated his confrontation rights[1].

¶ 37    Several cases have rejected defendant's argument that a witness's professed memory loss renders him unavailable for cross-examination in violation of the confrontation clause. In *Owens*, 484 U.S. at 556 (discussed earlier in this order), the victim of an assault had identified the defendant as his attacker during an interview with an FBI agent. At trial, the victim was unable to remember the identity of his assailant and his prior statement was admitted. *Id.* On appeal, the defendant argued that the admission of the prior statement violated the confrontation clause because the witness's memory loss precluded any ability to cross-examine him about that statement. *Id.* at 557. The Supreme Court held that the confrontation clause is not violated by admission of an identification statement of a witness who is unable, because of memory loss, to testify about the basis for the identification. *Id.* at 564. The Supreme Court explained:

> "The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [Citations.] ***[T]hat opportunity is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even *** the very fact that he has a bad memory. If the ability to inquire into these matters suffices to establish

---

[1] Defendant argues that in the event he forfeited review of his arguments regarding the allegedly improper admission of Wilusz's prior statements, we should consider whether his counsel was ineffective for failing to properly preserve the issue for review. The record reflects that the issue was preserved for review where defendant objected at trial and in a posttrial motion to the admission of Wilusz's prior statements, and therefore we need not address the ineffectiveness claim.

the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no reason why it should not suffice when the witness' past belief is introduced and he is unable to recollect the reason for that past belief." (Emphasis in original; internal quotation marks omitted.) *Id.* at 559.

¶ 38 In *U.S. v. Keeter*, 130 F. 3d 297 (7th Cir. 1997), the defendant was a federal prisoner tried for his role in smuggling amphetamine into the prison. *Id.* at 299. A fellow prisoner signed an affidavit and gave grand jury testimony implicating the defendant, but at trial he claimed an inability to remember anything except his name. *Id.* at 302. The affidavit and grand jury testimony were admitted as substantive evidence under Rule 801(d)(1)(A) and the defendant was convicted. *Id.* at 301-02. On appeal, the defendant argued that his confrontation rights were violated by the admission of the affidavit and grand jury testimony where the prisoner's professed memory loss prevented him from being cross-examined about his prior statements. *Id.* at 302. The appeals court disagreed, citing *Owens* and noting that "[t]he Supreme Court's point was that the confrontation clause (and the rule) are satisfied when the witness must look the accused in the eye in court; shortcomings in the declarant's memory may be made known to the jury." *Id.*

¶ 39 In *Flores*, 128 Ill. 2d at 79 (also discussed earlier in this order), the trial court admitted a witness's prior grand jury testimony implicating him as the shooter. The defendant argued that the admission of the prior testimony violated the confrontation clause because the witness's memory loss precluded any ability to cross-examine him about that testimony. *Id.* at 88. Citing *Owens*, the Illinois Supreme Court held that the trial court did not err in admitting the witness's grand jury testimony, as the "gap in the witness' recollection concerning the content of [his] prior statement" did not preclude an opportunity for effective cross-examination. *Id.* at 88-90.

¶ 40    In *People v. Wheatley*, 187 Ill. App. 3d 371 (1989), the defendant was charged with armed robbery and unlawful use of a weapon by a felon. *Id.* at 373. At trial, the State called the defendant's brother to testify, but he stated, "I do not want to testify in this case, period, because I do not remember." *Id.* at 376. Over the defendant's objection, the trial court allowed the State to introduce the brother's prior testimony at a codefendant's trial as an inconsistent statement under section 115-10.1. *Id.* In the prior testimony, the brother inculpated the defendant in the robbery. *Id* at 375. The defendant attempted to cross-examine his brother about his prior testimony, but he answered "I don't remember" to every question. *Id.* at 376. The defendant was convicted. *Id.* at 377.

¶ 41    On appeal, the defendant argued that his sixth amendment right to confrontation was violated by the admission of his brother's prior testimony where the brother repeatedly testified on cross-examination that he had no memory of the prior testimony. *Id.* at 380. We cited *Owens*' holding that the confrontation clause only guarantees an *opportunity* for effective cross-examination, not cross-examination to whatever extent the defense might wish, and that such an opportunity is present when the witness is placed on the stand, under oath, and willingly responds to questions. *Id.* (citing *Owens*, 484 U.S. at 559, 561). We further cited *Flores*' holding that a gap in the witness's recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. *Id.* (citing *Flores*, 128 Ill. 2d at 88). Based on *Owens* and *Flores*, we held that the defendant's sixth amendment confrontation right was not violated by the admission of his brother's prior testimony under section 115-10.1. *Id.* at 381.

¶ 42    Here, as in *Owens*, *Keeter*, *Flores*, and *Wheatley*, Wilusz appeared at trial under oath and willingly answered the State's questions on direct examination even though his professed memory-loss prevented him from recalling details about his earlier identification of defendant as the driver

of the SUV. Wilusz was made available for cross-examination, during which defendant could have questioned him about the basis and extent of the memory loss. Defendant declined to cross-examine Wilusz. As defendant was given the *opportunity* to cross-examine Wilusz and make the shortcomings in his memory known to the jury, which is all that the confrontation clause requires, the court's admission of Wilusz's prior grand jury testimony did not run afoul of the sixth amendment.

¶ 43    Defendant argues, though, that Wilusz's profession of *complete* memory loss of witnessing the collision and making the statements of identification to the police and to the ASA renders this case distinguishable from *Owens* and its progeny, which involved witnesses who only professed partial memory loss and thus could still be subjected to effective cross-examination. Contrary to defendant's argument, *Owens* did not distinguish between partial and complete memory loss when discussing whether a witness was subject to cross-examination for purposes of Rule 801(d)(1)(C) [the equivalent of section 115-12] and the confrontation clause; *Owens* held that any assertion of memory loss (whether partial or complete) was often the very result sought to be produced by cross-examination and therefore neither the confrontation clause nor Rule 801(d)(1)(C) is violated by the admission of an identification statement of a witness who is unable, due to memory loss, to testify concerning the basis for his identification. See *Owens*, 484 U.S. at 561-564.   See also *Wheatley*, 187 Ill. App. 3d at 376-381 (the witness's prior inconsistent statement was not rendered inadmissible under section 115-10.1 even though he professed complete memory loss during his cross-examination questions).

¶ 44    Defendant also argues that *Douglas v. Alabama*, 380 U.S. 415 (1965), compels a result different than the one reached here regarding whether his sixth amendment confrontation right was violated. In *Douglas*, the Supreme Court held that the defendant's right of cross-examination under

the confrontation clause was violated when a witness invoked the privilege against self-incrimination and refused to answer questions about the alleged crime. *Id.* at 419-20. *Douglas* is inapposite, as Wilusz never invoked his right against self-incrimination or otherwise refused to answer any questions at trial; rather, Wilusz answered all questions but explained that his memory loss prevented him from remembering all the circumstances surrounding the collision and his statements of identification. As discussed extensively above, Wilusz's professed memory loss did not deny defendant the right of cross-examination secured by the confrontation clause.

¶ 45    Next, defendant argues that the trial court erred by denying his *Krankel* motion alleging ineffective assistance of counsel without appointing new counsel or conducting a full evidentiary hearing. When a defendant presents a *pro se* posttrial claim alleging ineffective assistance of counsel, the trial court should conduct an adequate inquiry into the factual basis for the claim. *People v. Washington*, 2015 IL App (1st) 131023, ¶ 11. In making this inquiry, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). The court may also discuss the allegations with defendant and consider its knowledge of defense counsel's performance at trial and whether defendant's allegations are insufficient on their face. *Id.* at 78-79.

¶ 46    If the trial court determines, after the preliminary inquiry, that defendant's claim of ineffective assistance lacks merit or pertains only to matters of trial strategy, then it need not appoint new counsel and may deny the *pro se* motion. *Id.* at 78. However, if the allegations show possible neglect of the case, the court should appoint new counsel to represent defendant at a full evidentiary hearing on his claim. *Id.* The trial court's decision to deny defendant's motion without

appointing counsel or conducting a full evidentiary hearing will not be reversed unless manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 47    In the present case, defendant filed a posttrial *pro se Krankel* motion alleging that his trial counsel provided ineffective assistance by failing to investigate eyewitness Alexander Mendez, who claimed in an affidavit that he was present at the scene of the crash on July 10, 2017, and that he observed that the driver of the SUV was a female. The trial court proceeded to conduct a preliminary inquiry into the factual basis of defendant's claim of ineffective assistance. The trial court began the inquiry by having defendant sworn in and then asking him to elaborate on the information that Mendez would have provided at trial. Defendant responded that he had given counsel an affidavit from Mendez "stating that he was in the area, seen the driver, and it was a female." The court then inquired of defendant how he had learned that Mendez was a witness to the crash. Defendant stated that he met Mendez in prison in 2019 and that during the course of a conversation, the subject of the crash "just came up" and Mendez told defendant that he "witnessed the incident and he said [the driver of the SUV] was a female."

The trial court then asked defense counsel whether he was made aware of Mendez. Counsel responded affirmatively, noting that he was in possession of Mendez's affidavit attesting that he was present at the crash and saw that the driver of the SUV was female. However, counsel also informed the court that Mendez "gives a timeline that's inconsistent with the evidence in the case." Counsel noted that the uncontroverted evidence shows that the crash occurred "around 1:40, 1:45" in the morning and that the police arrived on scene about 1:47, but that Mendez said that the collision occurred 20 to 50 minutes later, between 2:00 a.m. and 2:30 a.m.. Counsel stated,

> "[A]s I told [defendant], *** the worst thing that a defendant can do in a case is be
> caught in a lie when they are presenting the evidence to the court or to a jury. We were

concerned about the veracity of this witness, and whether or not the witness would be a credible witness or whether his testimony would hurt more than [help] this case because of how it was presented, and in particular because of the timeline being off.

So it was a trial strategy decision not to move forward with this witness because we did not think it would help. My client agreed with me on that strategy as we discussed it in preparation for trial. We, in fact, months before trial had determined that this was not a path that we would pursue."

¶ 48    Counsel subsequently reiterated that he had examined Mendez's affidavit and that he even drove to the scene of the collision "to see if [Mendez's] testimony or the statement would be consistent with what he claimed." After examining the scene, counsel determined that he was "not comfortable" presenting Mendez's testimony. Counsel stated "it is my responsibility to make those determinations as it relates to preparing my client for trial and moving the case forward to trial. And I made that call and will make it every day of the week."

¶ 49    The trial court denied defendant's *Krankel* motion without appointing new counsel, finding that counsel's decision not to further investigate Mendez's potential testimony was a matter of trial strategy that did not constitute ineffective assistance or show any possible neglect of the case. We agree, where counsel explained that he examined Mendez's affidavit, discussed it with defendant, and determined that it was incredible because Mendez's timeline of the incident conflicted with the video evidence. In addition, Mendez's status as an inmate in a correctional facility, his failure to come forward sooner, and the improbability of how defendant met Mendez in prison and discovered his potential exculpatory testimony all weighed against the reliability of the statement. Counsel also explained that his investigation of the crime scene caused him to further question the veracity of Mendez's affidavit, and that he discussed his concerns with defendant and explained

to him that the "worst thing that a defendant can do in a case is be caught in a lie." Defendant agreed with counsel's decision not to further investigate and call Mendez as a witness at trial. On this record, the trial court did not manifestly err in finding that defendant had failed to show any possible neglect of his case and in denying his motion without appointing new counsel or holding a full evidentiary hearing.

¶ 50    Next, defendant contends that the State failed to prove him guilty of first-degree murder beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22.

¶ 51    Defendant argues that the State failed to prove he had the requisite mental state for first-degree murder because he did not intend or know that his conduct would kill or cause great bodily harm. Rather, defendant claims he acted recklessly in chasing after Perez's vehicle and striking it when Perez attempted to make a right turn from the center lane in front of defendant's SUV while traveling at a high rate of speed. Defendant argues that given the close proximity of the vehicles to each other and the speed at which they were traveling, he had no chance to avoid striking Perez's vehicle once it turned in front of him and therefore that the deadly crash resulted from defendant's recklessness as opposed to any intentional or knowing conduct. Defendant asks us to reduce his murder convictions to reckless homicide. See *People v. Eubanks*, 2019 IL 123525, ¶ 73 (reckless homicide is a lesser included offense of first-degree murder).

¶ 52    The primary difference between first-degree murder and reckless homicide is the mental state of the defendant. *People v. Eubanks*, 2019 IL 123525, ¶ 74. Reckless homicide requires a less culpable mental state than first-degree murder. Defendant is guilty of first-degree murder when he

kills an individual without lawful justification, and during the commission of the acts which cause the death, he intends to kill or do great bodily harm or knows that his acts will cause the victim's death (720 ILCS 5/9-1(a)(1) (West 2022)), or he knows that his acts create a strong probability of death or great bodily harm (*id.* § 9-1(a)(2)). Defendant is guilty of reckless homicide when he caused the victim's death by driving a motor vehicle recklessly in a manner likely to cause death or great bodily harm. *Id.* § 9-3. Defendant acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." *Id.* § 4-6.

¶ 53    In the present case, viewing all the evidence in the light most favorable to the State, any rational trier of fact could find defendant acted with the requisite mental state to support first-degree murder convictions under section 9-1(a)(2) in that he knew that his actions created a strong probability of death or great bodily harm. Specifically, the evidence showed that defendant was driving his SUV in a mixed residential/commercial area at about 1:40 a.m. on July 10, 2017. Wilusz was driving a vehicle nearby and noticed that defendant had a look on his face like he was "just going to do something." Defendant then rammed his SUV into the back of Perez's smaller Toyota Corolla while it was stopped at a red light. Perez looked back and saw gang signals being given out the window of the SUV. Perez drove away from the stop light at a speed that reached over 60 miles per hour. Defendant followed closely behind. Perez veered right and left in an attempt to elude defendant, but defendant continued to follow him for one or two blocks. Perez then attempted to make a right turn from the center lane in a further attempt to get away, and defendant struck the Toyota from behind, sending it smashing into a building, killing the two back-seat passengers and injuring Perez and his girlfriend.

¶ 54    Any rational trier of fact could find that defendant's act of initially ramming his SUV into the smaller Toyota Corolla while it was stopped at a red light, coupled with Wilusz's observation of the purposeful look on defendant's face and Perez's observation that someone in the SUV was giving off gang signals, indicated that the initial collision was intentional. Such a finding is further supported by the testimony of Master Sergeant Pappas, the accident reconstruction expert, who testified to his opinion that defendant intentionally collided with Perez's vehicle at the traffic light. Any rational trier of fact could further find that defendant knew that his act of then immediately chasing after the Toyota at a speed of more than 60 miles per hour, coming so close as to not even be a car-length apart, and continuing to closely follow behind the Toyota even when it changed lanes in an evasive maneuver, created a strong probability of a second collision that would cause death or great bodily harm given the disparity in the size of the vehicles and the speeds at which they were traveling. Viewed in the light most favorable to the prosecution, any rational trier of fact could find defendant guilty of first-degree murder under section 9-1(a)(2).

¶ 55    For all the foregoing reasons, we affirm the circuit court. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 56    Affirmed.